

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2006

# Morton Intl Inc v. AE Staley Mfg Co

Precedential or Non-Precedential: Precedential

Docket No. 04-3936

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Morton Intl Inc v. AE Staley Mfg Co" (2006). *2006 Decisions.* Paper 516.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/516

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3936

_____

MORTON INTERNATIONAL, INC.;
VELSICOL CHEMICAL CORPORATION;
NWI LAND MANAGEMENT CO.;
FRUIT OF THE LOOM, INCORPORATED

v.

A.E. STALEY MANUFACTURING COMPANY; AIRCO
INDUSTRIAL GASES,
f/k/a Airco Inc, a/k/a Air Reduction Company, Inc; ALLIED
CHEMICAL CORPORATION; ALUMINUM COMPANY OF
AMERICA, (ALCOA);
AMERICAN CYANAMID COMPANY; ARMSTRONG WORLD
INDUSTRIES;
ARSYNCO, INC.; BAILEY CONTROLS CO, f/k/a Bailey Meter Co;
BECTON-DICKINSON & CO, INC.; BELFORT INSTRUMENT
CO; BELMONT
METALS, INC., f/k/a Belmont Smelting & Refining Works, Inc.;
CANADIAN GYPSUM COMPANY; CANRAD, INC., (c/o Canrad
Precision
Industries, Inc.); CIBA-GEIGY CORPORATION; COLUMBIA
UNIVERSITY;
CONOPCO, INC., (Cheeseborough Ponds U.S.A. Co. Division);
COSAN
CHEMICAL CORP.; CROUSE-HINDS SEPCO CORPORATION,
f/k/a CONNECTICUT INTERNATIONAL; CROWN
ZELLERBACH CORP., a/k/a James River Corporation of Nevada;
CURTISS-WRIGHT; DAY & BALDWIN, f/k/a
C-P Pharmaceuticals, Inc.; DIAMOND SHAMROCK CHEMICALS
COMPANY,
a/k/a Occidental Electrochemicals Corporation; DOW-CORNING
CORP;
DURA ELECTRIC LAMP CO., INC.; DURACELL, INC., (as
successor to
Mallory Battery Co., Inc.); E.I. DUPONT DE NEMOURS & CO.,
INC.;
EASTERN SMELTING & REFINING CORP.; ENGLEHARD

MINERALS AND CHEMICALS CORPORATION;
ENVIRONMENTAL CONTROL SYSTEMS; EXXON
CORPORATION, U.S.A.; FEDERAL AVIATION
ADMINISTRATION; GARFIELD BARING CORPORATION, f/k/a
Garfield Smelting & Refining Co.; GENERAL ELECTRIC
COMPANY; GENERAL COLOR CO., INC.; GENERAL SIGNAL
CORPORATION; GILMARTIN INSTRUMENT CO.; HARTFORD
ELECTRIC SUPPLY COMPANY, INC.; HENKEL
CORPORATION; HOFFMANN-LAROCHE, INC.; HUDSAR
INCORPORATED;
INMAR ASSOCIATES, INC.; INMAR REALTY, INC;
INTERNATIONAL
NICKEL, INC.; J.M. NEY COMPANY; K.E.M CHEMICAL
COMPANY;
KOPPERS, a/k/a Beazer East, Inc; MAGNESIUM ELEKTRON;
MARVIN
H. MAHAN; MARISOL, INC.; MERCK & CO., INC.; MERCURY
ENTERPRISE
INC., f/k/a Mercury Instrument Service; MINNESOTA MINING
AND
MANUFACTURING COMPANY; MOBIL OIL CORPORATION;
MT. UNION COLLEGE; M.W. KELLOGG CO.; NATIONAL
LEAD CO, (Goldsmith Brothers Division); NEPERA, INC; NEW
ENGLAND LAMINATES CO., INC.; NEW JERSEY
INSTITUTE OF TECHNOLOGY, f/k/a Newark College of
Engineering;
NEW YORK CITY TRANSIT AUTHORITY; NORTHEAST
CHEMICAL CO.,
(Northeast Chemical & Industrial Supply Co., Inc.);
OCCIDENTAL CHEMICAL CORPORATION, (as successor to
Diamond Shamrock
Chemical Co., formerly Diamond Shamrock Corporation); OLIN
CORP,
f/k/a Olin Mathieson Chemical Corporation; PEASE & CURREN
INC;
PFIZER, INC; PSG INDUSTRIES, INC., f/k/a Philadelphia Scientific
Glass, Inc.; PHILLIPS & JACOBS, INC.; PUBLIC SERVICE
ELECTRIC &
GAS, (PSE&G); PURE LAB OF AMERICA; RANDOLPH
PRODUCTS COMPANY;
RAY-O-VAC DIVISION OF ESB, INC., (ESB, Inc.); REDLAND
MINERALS LTD;
D.F. GOLDSMITH CHEMICAL & METAL CORPORATION;
MALLINCKRODT

2

CHEMICAL, INC.; RHONE-POULENC, INC., f/k/a Alcolac Chemical
Company/Guard Chemical Company; ROYCE ASSOCIATES, f/k/a Royce
Chemical; RUTGERS, THE STATE UNIVERSITY; SCIENTIFIC CHEMICAL
PROCESSING, INC.; SCIENTIFIC CHEMICAL TREATMENT CO., INC.;
SCIENTIFIC INC; SEAFORTH MINERAL & ORE CO.; SPARROW REALTY, INC.;
STATE UNIVERSITY OF NEW YORK AT BUFFALO, (S.U.N.Y.A.B.); SYLVANIA
GTE; TENNECO, INC; TRANSTECH INDUSTRIES, INC; UEHLING INSTRUMENT CO., INC.; UNION CARBIDE CORPORATION; UNIVERSAL OIL PRODUCTS CO.; UNIVERSITY OF ILLINOIS; UNIVERSITY OF MINNESOTA; VAR-LAC-OID CHEMICAL COMPANY, INC.; W.A. BAUM CO., INC.; WAGNER ELECTRIC COMPANY; WESTERN MICHIGAN UNIVERSITY; WESTINGHOUSE ELECTRIC CORPORATION; JOHN DOE 1-100; GEORGE VAN CLEVE; THE CONNECTICUT LIGHT AND POWER COMPANY, f/k/a Hartford Electric Light Company; GTE OPERATIONS SUPPORT INCORPORATED; ALLIEDSIGNAL, INC.; BEAZER EAST, INC; JERSEY CITY MANAGEMENT, INC.; ASHLAND CHEMICAL CO., a Division of Ashland Oil, Inc.; BASF CORP, and as successor to Wyandotte Chemical Corp., a/k/a Inmont Corporation; FMC CORPORATION

Morton International Inc.,

Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 96-03609)
Honorable Katharine S. Hayden, District Judge

———

Argued June 7, 2006

BEFORE: AMBRO, FUENTES, and GREENBERG, Circuit Judges

(Filed:  August 18, 2006)

3

Kim Hoyt Sperduto (argued)
T. Stewart Rauch
The Sperduto Law Firm
2021 L Street, N.W.
Second Floor
Washington, DC 20036

Steven M. Richman
Sandra A. Jeskie
Duane Morris
240 Princeton Avenue
Suite 150
Hamilton, NJ 08619

    Attorneys for Appellee

Samuel P. Moulthrop (argued)
Alexa Richman-La Londe
Andrew M. Contreras
Riker, Danzig, Scherer, Hyland
& Perretti
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Robert A. Lonergan
Vice President and General Counsel
Ellen S. Friedell
Associate General Counsel
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106

    Attorneys for Appellant

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before the court on an appeal by Morton International, Inc. ("Morton") from the district court's order entered on March 30, 1999, dismissing Morton's contribution claim against Redland Minerals, Ltd. ("RML") for want of personal jurisdiction. The contribution action succeeded a state court proceeding in which the court found Morton and various other entities jointly and severally liable for mercury contamination in the area of Berry's Creek in Bergen County, New Jersey. Morton later filed an action against RML and other defendants seeking contribution. The district court dismissed RML from the action for want of personal jurisdiction on March 30, 1999, and granted summary judgment to another defendant, Tennessee Gas Pipeline Company ("Tenneco"), on July 23, 2001. Thereafter, with the remaining parties' consent and at their request, the court dismissed the case without prejudice as to the remaining defendants on October 23, 2001. Morton subsequently appealed from the July 23, 2001 order, and after we vacated that order on September 16, 2003, and remanded the case against Tenneco to the district court, that court on September 14, 2004, dismissed the action against Tenneco without prejudice. Then, on October 6, 2004, Morton filed an appeal from the order of March 30, 1999, dismissing the action against RML.[1] RML has filed a motion to dismiss the appeal for lack of appellate jurisdiction. We will grant RML's motion to dismiss because we lack jurisdiction over Morton's premature appeal.

## II. FACTS AND PROCEDURAL HISTORY

In 1976, the New Jersey Department of Environmental Protection ("DEP") commenced an enforcement action in the Superior Court of New Jersey against various entities as a result of contamination in the Berry's Creek area.[2] The DEP was successful in the action, and, on the ensuing appeal the Supreme Court of New

---

[1]The other defendants have not participated in this appeal.

[2]The extensive background to the Berry's Creek litigation is not directly germane to the basis on which we dispose of this appeal, and thus we need not set it forth in full. For a comprehensive statement of the underlying facts and background, see Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669 (3d Cir. 2003). See also Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 154-57 (N.J. 1983).

Jersey in 1983 affirmed a Superior Court order requiring those entities, including Morton, to remediate the contamination in the Berry's Creek area. See Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150 (N.J. 1983). In 1996, Morton, which is the successor in interest to Ventron Corporation, a defendant in the state case, filed this action seeking contribution for its damages arising out of the Ventron litigation from RML and numerous other defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act of 1976 ("RCRA"), Pub. L. No. 94-580, 90 Stat. 2795 (1976), as amended 42 U.S.C. § 6901 et seq.; the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11 et seq. (West 1992); the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; and the common law.[3] RML, which formerly was known as F.W. Berk & Co., Ltd. ("Berk U.K."), was the British parent corporation of the former F.W. Berk & Company, Inc. ("Berk U.S."). According to Morton, RML was liable for contribution based on Berk U.S.'s operation of a manufacturing facility from 1929 to the 1950s "which . . . continued to result in the handling, storage, treatment, transportation, disposal, and/or release of solid and/or hazardous wastes . . . around the Berry's Creek area." J.A. at 102-03.[4]

On March 13, 1997, RML filed a motion in the district court seeking to dismiss Morton's contribution claim against it for lack of personal jurisdiction. The parties engaged in discovery on the jurisdictional issue following which, as we have indicated, on March 30, 1999, the court granted RML's motion ("RML Dismissal Order").[5] At that time Morton did not file a motion seeking an order

_____

[3]"J.A." refers to the joint appendix submitted by counsel for Morton. "RML Mot." refers to RML's motion to dismiss for lack of appellate jurisdiction that RML submitted to this court on December 16, 2005. "Morton Opp'n" refers to Morton's opposition to RML's motion to dismiss submitted to this court on January 5, 2006. "RML Reply" refers to RML's reply in further support of its motion to dismiss submitted to this court on January 13, 2006.

[4]Berk U.S. dissolved in 1960.

[5]The order was dated and signed by the court on March 26, 1999, but the stamp of its filing date indicates that it was not filed until March 29, 1999, and the docket sheet indicates that it was entered on March 30, 1999. These variations do not affect our analysis, and we hereinafter

6

certifying the RML Dismissal Order as final and appealable pursuant to Fed. R. Civ. P. 54(b) ("Rule 54(b)"), and it has not done so since. As we also have indicated, on July 23, 2001, the district court entered summary judgment in favor of defendant Tenneco and dismissed Morton's complaint as to Tenneco ("2001 Tenneco Order"). Then, on October 23, 2001, the court entered the consent order dismissing the action without prejudice as to the remaining defendants ("2001 Dismissal Order").[6] As of October 23, 2001, the court had dismissed the action as to RML for lack of jurisdiction, granted Tenneco summary judgment on the merits, and dismissed the action without prejudice against the remaining defendants by consent. Thus, as there were no remaining defendants, the court on October 25, 2001, marked the case "closed" on the docket. Nevertheless on October 29, 2001, at Morton's request in a motion it filed before the entry of the 2001 Dismissal Order, the district court entered an order certifying the 2001 Tenneco Order as final and appealable pursuant to Rule 54(b).

On November 27, 2001, Morton filed an appeal from the 2001 Tenneco Order ("Tenneco Appeal"). On September 16, 2003, we vacated the 2001 Tenneco Order and remanded the case for further proceedings. Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669 (3d Cir. 2003). On remand on September 14, 2004, the district court entered a stipulation and agreed order of voluntary dismissal without prejudice between Morton and Tenneco ("2004 Tenneco Order"). The 2004 Tenneco Order was nearly identical to the 2001 Dismissal Order.

On October 6, 2004, Morton filed an appeal from the March 30, 1999 RML Dismissal Order. Plainly, Morton measured the time for appeal from the 1999 RML Dismissal Order from the time of entry of the 2004 Tenneco Order, for if it measured the time from the entry of the RML Dismissal Order or from the entry of the 2001 Dismissal Order, the appeal would have been grossly untimely. See Fed. R. App. P. 4(a)(1)(A). Thus, Morton implicitly regarded the 2004 Tenneco Order as the final order in this case.

On December 16, 2005, RML filed its motion to dismiss for

---

will refer to the order as having been entered on the latest of the three dates, March 30, 1999.

[6]The dismissal order was filed on October 19, 2001, but was not entered on the docket until October 23, 2001.

lack of appellate jurisdiction.[7]  According to RML, Morton's appeal is premature inasmuch as the 1999 RML Dismissal Order was not final when entered because other defendants then remained in the case, the 2001 Dismissal Order dismissing all of the then remaining defendants without prejudice did not render the RML Dismissal Order final, and the 2004 Tenneco Order did not render the RML Dismissal Order final.[8]  Morton opposed the motion.  The motions panel referred the motion to a merits panel, and on June 7, 2006, we heard oral argument on the appeal.  We will dismiss the appeal as premature notwithstanding the elapse of more than seven years since the entry of the order from which Morton appeals.

## III.  DISCUSSION

Ordinarily the proceedings in a district court must be final as to the all causes of action and parties for a court of appeals to have jurisdiction over an appeal under 28 U.S.C. § 1291.[9]  Andrews v. United States, 373 U.S. 334, 340, 83 S.Ct. 1236, 1240 (1963); Jackson v. Hart, 435 F.2d 1293, 1294 (3d Cir. 1970).  The classic definition of a "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 1718 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633 (1945)).  Thus, "an order which terminates fewer than all claims, or claims against fewer than all

[7]Prior to the filing of its motion to dismiss for lack of appellate jurisdiction, RML filed a motion for summary action based on the alleged lack of appellate jurisdiction.  We denied without prejudice RML's motion for summary action to allow the parties to present the jurisdictional issues to a merits panel.

[8]RML alternatively argued that Morton's appeal is "too late" because "there was a decision in October 2001 that fully resolved all claims presented in the district court . . . [and therefore] Morton's appeal is approximately three years too late."  RML Reply at 2.  Of course, inasmuch as we find that the appeal was too early, it cannot have been too late.

[9]The parties dispute whether we have appellate jurisdiction under 28 U.S.C. § 1291; Morton does not suggest that we have an alternative basis to exercise jurisdiction, and we find none.

8

parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." Carter v. City of Philadelphia, 181 F.3d 339, 343 (3d Cir. 1999).

Accordingly, unless the district court directs the entry of a final judgment as to that order pursuant to Fed. R. Civ. P. 54(b), an order, such as the RML Dismissal Order, in which the district court dismissed one defendant for want of personal jurisdiction but other defendants remained, could not in itself be a final order for purposes of appeal when the court entered it. See Special Invs., Inc. v. Aero Air, Inc., 360 F.3d 989, 993 (9th Cir. 2004) ("An order dismissing one party for lack of personal jurisdiction while allowing suit to continue against the remaining defendants is not a final, appealable order, absent an 'express determination that there is no just reason for delay and . . . an express direction for the entry of judgment.'") (citing Fed. R. Civ. P. 54(b); 28 U.S.C. § 1291); see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (district court order dismissing some, but not all, defendants for lack of personal jurisdiction not considered final and appealable although appellate jurisdiction existed because district court granted permission for an interlocutory appeal); Allen v. Okam Holdings, Inc., 116 F.3d 153, 154 (5th Cir. 1997) (dismissing appeal for lack of appellate jurisdiction when district court dismissed one of two defendants for lack of personal jurisdiction); Chapple v. Levinsky, 961 F.2d 372, 374 (2d Cir. 1992) (dismissal of three defendants for lack of personal jurisdiction could not be appealed absent certification under Rule 54(b), because case remained pending against other defendant, even though court transferred action as to that defendant to more convenient venue). Therefore, the district court's March 30, 1999 RML Dismissal Order dismissing RML as a defendant for want of personal jurisdiction was not a final order for purposes of appeal under 28 U.S.C. § 1291 when the court entered it inasmuch as other defendants remained in the case and the court did not certify the order as final under Rule 54(b).

Furthermore, the court, by dismissing the remaining defendants on October 23, 2001, after it entered the 2001 Tenneco Order, did not render the March 30, 1999 RML Dismissal Order final. The general rule that once all claims against all parties have been dismissed a prior order will become final for purposes of appeal under 28 U.S.C. § 1291, see e.g., Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 505 (3d Cir. 1995), does not apply in this case because the district court's order entered on October 23, 2001, dismissed all remaining defendants without prejudice and expressly contemplated

that Morton could refile the action if the parties were unable to resolve their dispute through a non-binding alternative resolution process. Moreover, the 2001 Dismissal Order contained comprehensive provisions tolling the running of any and all applicable statutes of limitations, and Morton, in opposing RML's motion to dismiss this appeal, did not contend and never since has contended that the tolling provisions are not still in effect. Thus, Morton does not argue that it no longer can initiate litigation arising out of the basic controversy in this case against the defendants dismissed without prejudice in the 2001 Dismissal Order.

The principle that, "[w]hen a District Court dismisses a case pending settlement, and grants the Appellants leave to re-file within a set period of time, the order cannot be considered final for the purposes of appeal on the date it was entered," Berke v. Bloch, 242 F.3d 131, 135 (3d Cir. 2001), governs this case. Only "if terms are reached, and/or the plaintiff makes no attempt to re-open the litigation, [will] the order ripen[] into a final, appealable order upon the expiration of the fixed time period." Id. Thus, "an order dismissing a complaint without prejudice is not a final and appealable order, unless the plaintiff no longer can amend the complaint because, for example, the statute of limitations has run, or the plaintiff has elected to stand on the complaint." Newark Branch, N.A.A.C.P. v. Town of Harrison, 907 F.2d 1408, 1416-17 (3d Cir. 1990) (internal citations and footnotes omitted); see also Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 438-40 (3d Cir. 2003) ("Given the strong policy against piecemeal litigation that underlies the finality requirement of § 1291, we have adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed without prejudice.") (emphasis added) (citing Erie County Retirees Ass'n v. County of Erie, 220 F.3d 193, 201 (3d Cir. 2000)); Ahmed v. Dragovich, 297 F.3d 201, 207 (3d Cir. 2002) (a dismissal without prejudice is considered final where the applicable statute of limitations would not permit the refiling of a claim); Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (order of dismissal without prejudice not a final, appealable order unless and until the party seeking relief disavows any intention to reinstitute the litigation).

The reason for the dismissal without prejudice exception to the general rule that an order in a case is final for purposes of appeal when the court has dismissed the case as to all claims and parties is obvious, as the treatment of dismissals without prejudice as not being

final "disallows the manipulative plaintiff from having his cake (the ability to refile the claims voluntarily dismissed) and eating it too (getting an early bite at reversing the claims dismissed involuntarily)." Marshall v. Kansas City S. Ry. Co., 378 F.3d 495, 500 (5th Cir. 2004). On the other hand, the reason for the exception to the exception to the rule that a case dismissed without prejudice is not final is equally obvious. The exception to the exception is appropriate because a case dismissed without prejudice that cannot be reinstituted is in the same position as a case dismissed with prejudice in that both classes of cases have reached finality.

Several of our cases demonstrate the application of finality rules when cases are dismissed without prejudice. In Tiernan, for example, we pointed out that the plaintiffs initially retained the ability to reinstitute part of the litigation following the dismissal without prejudice of some, but not all, of the defendants. 923 F.2d at 1031. We nonetheless determined that the order was final because, "[s]everal months after th[e] appeal was filed, plaintiffs renounced, through letter briefs, any intention to take further action against the [defendants]." Id. In Blair v. Scott Specialty Gases, 283 F.3d 595, 602 (3d Cir. 2002), we similarly held that the district court's order dismissing the case without prejudice and directing the parties to proceed with arbitration was final and appealable because "the District Court did not retain jurisdiction over any of [the plaintiff's] claims as every claim was held to be arbitrable." In other words, there was "nothing left for [the plaintiff] to do but submit to arbitration, and nothing left for the District Court to do other than execute, modify, or vacate the ultimate arbitration award." Id. at 601.

Here, in its 2001 Dismissal Order dismissing the action as to the defendants remaining without prejudice after Tenneco and RML were out of the case, the district court expressly contemplated that there could be "subsequent proceedings . . . in the event litigation is resumed." RML Mot., Ex. D at 2. The order also provided that "the Parties may re-file claims against each other" if they are unable to settle the dispute in "informal, non-binding alternative dispute resolution procedures." RML Mot., Ex. D at 4. In addition, the district court specifically stated that the dismissal "shall not constitute an adjudication on the merits." RML Mot., Ex. D at 3. Unlike the order in Blair directing the parties to arbitrate, which left nothing for the court to do but to execute the judgment, the 2001 Dismissal Order did not compel the parties to participate in binding arbitration. The order merely afforded the parties the opportunity to participate in non-binding alternative dispute resolution procedures and

11

contemplated that there could be further litigation should the non-judicial resolution process fail.

Furthermore, unlike the plaintiffs in Tiernan, Morton has not renounced its intention to take further action against the defendants. See 923 F.2d at 1031. Quite to the contrary, at oral argument before us Morton expressly declined to disavow any intention to take further action against the Berry's Creek defendants and stated that "at some point in the future another action might be brought involving this matter." Thus, its position at oral argument reiterated what Morton said when, in opposing RML's motion to dismiss this appeal, it acknowledged that "there might be a new action sometime in the future based upon the same controversy."[10] Morton Opp'n at 7.

We reject Morton's contention that the 2001 Dismissal Order is nonetheless final because, although "there might be a new action sometime in the future based upon the same controversy," Morton Opp'n at 7 (emphasis added), "there is nothing in the dismissal orders that will allow Morton to reinstitute the current action." Morton Opp'n at 7 (emphasis added) (citing Aluminum Co. of Am. v. Beazer East, Inc. (ALCOA), 124 F.3d 551, 559 (3d Cir. 1997)). In this regard, Morton relies on ALCOA, in which we stated that finality is not lacking "even if another action regarding the same controversy may occur before the same or another court," ALCOA, 124 F.3d at 561, and when "there will not be [] any further proceedings in the district court as part of the same action, the district court's decision must be considered final for purposes of § 1291." Id. at 560.

Although the quoted language in ALCOA distinguished between further proceedings in the "same" action, 124 F.3d at 560, and further proceedings in "another action," id. at 561, ALCOA

---

[10]Notably, Morton has had several opportunities to seek to have the district court render the March 30, 1999 RML Dismissal Order final, or to take steps itself to render the RML Dismissal Order final, but has failed to do so. For example, Morton could have sought certification from the district court pursuant to Rule 54(b) that the RML Dismissal Order was final and appealable, but it has not done so. Alternatively, Morton could have stipulated to a dismissal with prejudice as to the remaining defendants. Finally, as we have indicated, Morton could have disavowed any intention to take further action against the Berry's Creek defendants, but when we gave it the opportunity to do so at oral argument, it rejected that invitation.

involved "an unusual posture," id. at 559, and the purported distinction upon which Morton relies is inapposite to the facts of this case. In ALCOA, the district court entered a consent order, which stated that "any issues remaining after the liability trial, i.e., allocation or apportionment of . . . damages, shall be referred to a private binding mediation/arbitration process . . . ." Id. at 556. Following a subsequent bench trial in which the district court found that certain of the defendants were not liable, the cross-claimants took an appeal from the order entered on the findings.

We concluded that we had jurisdiction over the appeal despite the fact that the consent order "le[ft] other issues relevant to the controversy - and therefore, certain of the parties' claims - still to be resolved through a separate arbitration or mediation process[,]" id. at 559, because "every issue that was left unresolved [i.e., non-liability issues] after trial [had] been removed from the [district] court and referred to arbitration/mediation. The consent order guarantees that there will be no further proceedings before the district court in this action." Id. We explained that the district court "accomplish[ed] all that the parties asked the court to accomplish," id. at 560, and "subsequent judicial proceedings to enforce, confirm, or vacate an arbitration award are regarded as distinct matters, and the possibility of their occurrence does not deprive the district court's order in the original proceeding of its finality." Id. at 561.

After our review of the quoted language from ALCOA in its proper context, we are satisfied that that case does not support a conclusion that the without prejudice 2001 Dismissal Order in this case is final. Here, Morton may refile its claims should the alternative dispute resolution procedures fail as the dismissal order expressly allows it to do so. Despite the district court's characterization of such a refiling as "subsequently-initiated litigation," see RML Mot., Ex. D at 4, the district court to date has not "accomplish[ed] all that the parties asked the court to accomplish" merely by allowing the parties to resolve their differences in a non-judicial setting. See ALCOA, 124 F.3d at 560. Therefore, any "subsequently-initiated litigation" effectively will be part of the original action and controversy, albeit with a new caption and docket number. Unlike the situation in ALCOA, the subsequent action or actions will not be initiated solely "to enforce, confirm, or vacate an arbitration award," 124 F.3d at 561, inasmuch as the 2001 Dismissal Order did not compel the parties to arbitrate, or even contemplate that the parties would engage in binding arbitration, but rather contemplated that if settlement efforts failed that there might be further litigation regarding the original

13

controversy.[11]  Consequently, there is potential for the district court to revisit the case in the event that Morton refiles its claims against one or more of the defendants, which may require the district court to adjudicate its claim or claims on the merits.  Therefore, the order of dismissal of all remaining defendants on October 23, 2001, was not a final order and thus did not render the 1999 RML Dismissal Order final and appealable.[12]

---

[11]We are satisfied that the 2001 Dismissal Order did not contemplate the possibility that the parties would engage in a binding alternative dispute resolution process because the order provided that "the Parties shall participate in informal, non-binding alternative dispute resolution procedures to explore opportunities for settling the matters in controversy among the Parties."  RML Mot., Ex. D at 4.  Thus, this case differs from ALCOA, in which the dismissal of the district court action was to be followed by "a private binding mediation/arbitration process." ALCOA, 124 F.3d at 556 (emphasis added).  But even if the 2001 Dismissal Order had allowed the parties to engage in a binding arbitration process, our result would have been the same inasmuch as only a mandatory requirement that the parties engage in such a process to resolve the substantive issues to the exclusion of other procedures could have foreclosed the possibility that there would be future litigation regarding the basic controversy.  Of course, if a case is dismissed without prejudice and the parties agree to engage in binding arbitration at a later date, then the order of dismissal without prejudice will become final at that time for purposes of appeal because the possibility of future litigation regarding the basic controversy will be foreclosed.

[12]We also note that the district court's certification of the 2001 Tenneco Order as final and appealable under Rule 54(b) on October 29, 2001, did not lend finality to the previously entered RML Dismissal Order, as the court did not certify the RML Dismissal Order as final under Rule 54(b).  A party in a case involving multiple defendants seeking to appeal from the dismissal of one defendant may not appeal from the dismissal order unless the trial court certifies the particular order from which it seeks to appeal as final under Rule 54(b).  See Matthews v. Ashland Chem., Inc., 703 F.2d 921, 922 (5th Cir. 1983) (judgment dismissing one claim against one defendant was not entered under Rule 54(b) so appeal from that judgment "must be dismissed without prejudice as premature" even though court certifies other dismissals against other defendants as final).  In Transit Mgmt. of Southeast La., Inc. v. Group Ins. Admin., 226 F.3d 376, 382 (5th Cir. 2000), the Court of Appeals for the Fifth Circuit acknowledged that the

14

Our holding in <u>LNC Invs. LLC v. Republic Nicaragua</u>, 396 F.3d 342, 347 (3d Cir. 2005), further supports the principle that a dismissal order that contemplates that there may be a future action based on the same controversy does not constitute a final order for purposes of appeal. In <u>LNC Invs.</u>, we did not consider final "LNC's voluntary dismissal without prejudice of the pending garnishment actions against [defendant's former parent companies]" inasmuch as the order did "not effectively bar a <u>future</u> garnishment action against the parent companies arising from the [disputed agreement]." <u>Id.</u> (emphasis added). Similarly, in <u>Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.</u>, 819 F.2d 400, 403 (3d Cir. 1987), we concluded that an order terminating the action "pending the result of an arbitration proceeding" and allowing the matter to be "reinstated upon motion by either party" was not final for purposes of section 1291.[13] We explained that "[w]hile it is not clear what course the case will take upon the completion of the pending arbitration, the order clearly contemplates the possibility of <u>further proceedings</u>." <u>Id.</u> (emphasis added); <u>see also</u> <u>Delgrosso v. Spang & Co.</u>, 903 F.2d 234, 236 (3d Cir. 1990) (An order that "permits reinstatement and contemplates the possibility of future proceedings . . . is not final for purposes of § 1291.").[14]

---

district court expressly dismissed certain of the defendants and certified the order as final under Rule 54(b). However, because the district court "fail[ed] to explicitly include [the remaining dismissed] claims within the Rule 54(b) final judgment," the court of appeals dismissed the appeal from the order dismissing the remaining claims, which the district court had not certified under Rule 54(b). <u>Id.</u> Of course, entry of the 2004 Tenneco Order does not lend any finality to the case as that order, which provided for a dismissal without prejudice, was not final in itself and the court never certified it as final under Rule 54(b).

[13]We held, however, that we had jurisdiction over the appeal by reason of the applicability of what we described as the "metaphysical <u>Enelow-Ettelson</u> doctrine," 819 F.2d at 404, that the Supreme Court later abrogated in <u>Gulfstream Aerospace Corp. v. Mayacamas Corp.</u>, 485 U.S. 271, 108 S.Ct. 1133 (1988).

[14]The <u>Delgrosso</u> order resembled the 2001 Dismissal Order inasmuch as it stated in part:

Nothing contained in this order shall be considered a dismissal or disposition of this matter and, should further proceedings in it become necessary or desirable, either party may initiate it in

15

The approach to finality that we take here and took in <u>LNC Invs.</u>, <u>Patten</u>, <u>Delgrosso</u> and numerous other cases is consistent with the approach of other courts of appeals. For example, the Court of Appeals for the Second Circuit has held that "a dismissal without prejudice [that] does not preclude <u>another action</u> on the same claims" will not be considered final for purposes of appeal. <u>Chappelle v. Beacon Commc'ns Corp.</u>, 84 F.3d 652, 654 (2d Cir. 1996) (emphasis added); <u>see also</u> <u>Larkin v. Galloway</u>, 266 F.3d 718, 721 (7th Cir. 2001) (plaintiff cannot appeal dismissal without prejudice if he is free to <u>refile</u> his claims). In addition, <u>Samco Global Arms, Inc. v. Arita</u>, 395 F.3d 1212, 1213 n.2 (11th Cir. 2005), is consistent with the exception to the rule of non-finality for appeal purposes of a dismissal without prejudice that we recognized in <u>Tiernan</u> and <u>Blair</u>, as it indicated that, "[a]lthough the district court order dismissed the case 'without prejudice,' it is clear that the order was nevertheless 'final,' as the district court found the defendants immune from all claims by [the plaintiff] relating to the defendants' actions, and closed the case without granting the plaintiff permission to amend or refile."

Contrary to Morton's assertion, the words "Case closed" entered on the docket sheet on October 25, 2001, are not dispositive on the question of whether the 2001 Dismissal Order and thus the earlier RML Dismissal Order are final. An order reciting that no further action is contemplated and directing the clerk to mark the case closed does not become final for purposes of appellate jurisdiction merely by reason of the execution of that order and its entry on the docket.[15] <u>Delgrosso</u>, 903 F.2d at 236. In <u>Delgrosso</u>, we explained that "[t]he order [directing the clerk to mark the case closed] does not purport to end litigation on the merits and the parties agree that it does not determine any issues or resolve the entire case." <u>Id.</u> The "Case closed" entry on the docket sheet in this case similarly fails to demonstrate that the orders entered were final for purposes of appeal.

---

the same manner as if this order had not been entered.

903 F.2d at 236.

[15]Of course, it will be final if the other bases for finality are present, <u>e.g.</u>, the court has dismissed the case with prejudice as to all claims and all parties. But if those bases are present, the case will be final for purposes of appeal even if the court has not marked the case closed on the docket.

16

We also draw on our own experience in recognizing that a district court does not render a matter final for purposes of appeal merely by marking the docket in the case with the notation "Case closed." In fact, our experience teaches us that sometimes a district court will mark a case closed when it could not possibly be final for purposes of appeal. See Penn West Assocs., Inc. v. Cohen, 371 F.3d 118, 128 (3d Cir. 2004). We believe that there is not an inconsistency in marking a case closed even though the court has not entered a final order in the case for appeal purposes as district courts mark cases closed for unassailable administrative reasons when they contemplate that there will not be further proceedings in them. For example, as happened here, it is appropriate for a district court to mark the docket as "case closed" even though the court dismissed the action without prejudice and there was no impediment to a party seeking to reinstate the case. In this regard, we point out that it is entirely reasonable for a court to mark such a case as closed though the court has not entered a final order in the case for appeal purposes because frequently the parties do not reinstitute cases dismissed without prejudice.

In sum, the 2001 Dismissal Order dismissing all remaining defendants on October 23, 2001, was not a final order and thus did not lend finality to the March 30, 1999 RML Dismissal Order. The 2001 Dismissal Order dismissing the remaining defendants without prejudice did not purport to end the litigation on the merits and specifically contemplated that there could be subsequent proceedings in which the litigation over the controversy would resume. Accordingly, the 2001 Dismissal Order fails to satisfy the traditional requirement for a judgment to be final and therefore cannot lend finality to the earlier order dismissing RML. See Quackenbush, 517 U.S. at 712, 116 S. Ct. at 1718. The same is true with respect to the 2004 Tenneco Order, the entry of which Morton regards as triggering its right to appeal from the RML Dismissal Order, as it does not preclude further litigation against any of the defendants in this case.

Finally, we should not close our opinion without commenting on an inconsistency in Morton's position. Morton's argument that its appeal is not "too early" is predicated on the premise that the district court disposed of the case against the last remaining defendant when it entered the 2004 Tenneco Order dismissing the action without prejudice as to Tenneco. However, if we accept this proposition, Morton's appeal of the RML Dismissal Order is too late inasmuch as the district court dismissed the remaining defendants in the 2001 Dismissal Order after it granted Tenneco summary judgment in the 2001 Tenneco Order, but Morton's appeal would be untimely if

measured from either of those orders. The point we make is necessarily true because both the 2001 Dismissal Order and the 2004 Tenneco Order dismissed the defendant or defendants remaining at that time without prejudice. Thus, if the 2004 Tenneco Order was final for purposes of an appeal then the 2001 Dismissal Order was similarly final because at that point there were no remaining defendants in the case.

In explaining that its appeal "is not too late," Morton claims that the orders entered in 2001 were not final because this court subsequently entertained Morton's appeal as to the 2001 Tenneco Order and remanded the case against Tenneco for further proceedings. Morton Opp'n at 4. According to Morton, "[a]ll claims against all parties were not effectively disposed of since this Court remanded for further proceedings the claims against Tenneco." Morton Opp'n at 4.

This argument plainly is flawed inasmuch as neither the filing of nor the disposition of the Tenneco appeal would have altered the period during which Morton timely could have appealed from the RML Dismissal Order, if Morton could have filed such an appeal prior to the proceedings on the Tenneco Appeal. Moreover, the Tenneco Appeal did not affect or alter the finality or lack of finality of the previously entered RML Dismissal Order and the 2001 Dismissal Order. This principle is demonstrated by our opinion in New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1180 (3d Cir. 1991), in which we indicated that "we know of no case that says that an order that is 'final' when an appeal is taken can be rendered non-final by a later decision of the appellate court." Any other rule would invite judicial chaos as it would mean that after a court of appeals adjudicated an appeal, at least if its disposition remanded the case as it did on the Tenneco Appeal, a party would be able to appeal from an order entered prior to entry of the order from which the appellant initially had appealed. Thus, if we accepted Morton's argument with respect to the effect of the Tenneco Appeal and the subsequent entry of the 2004 Tenneco Order, we would be permitting parties to take serial appeals from orders entered prior to entry of the final order permitting the original appeal. We certainly will not do that.

Accordingly, inasmuch as the finality of an underlying order is not affected or altered by a later appeal, the appeal and even a reversal or vacation of an order that a district court has entered does not reactivate the period during which a party may appeal from orders from which it has not appealed already. Therefore, if Morton could

have appealed from the RML Dismissal Order after we vacated the 2001 Tenneco Order on September 16, 2003, and the district court entered the 2004 Tenneco Order, on the theory that the RML Dismissal Order became final when the district court entered the 2004 Tenneco Order, it necessarily follows that the RML Dismissal Order had to have been final years earlier which it was not. Thus, Morton is caught in a trap of its own making because if we accept its argument that its appeal is not premature then we must hold that it is too late.

## IV. CONCLUSION

For the foregoing reasons, we will grant RML's motion to dismiss this appeal for lack of subject-matter jurisdiction.

———