

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2007

# Iverson v. Philadelphia

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3668

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Iverson v. Philadelphia" (2007). *2007 Decisions*. Paper 1773.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1773

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3668
_____

LEROY IVERSON,

Appellant,

v.

CITY OF PHILADELPHIA.

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cv-02275)
District Judge:  Honorable John R. Padova

Submitted Under Third Circuit LAR 34.1(a)
December 14, 2006

Before: FISHER, CHAGARES and GREENBERG, *Circuit Judges*.

(Filed: January 12, 2007)
_____

OPINION OF THE COURT
_____

CHAGARES, *Circuit Judge*.

Plaintiff-appellant Leroy Iverson ("Iverson") appeals the District Court's Order of June 28, 2005 granting summary judgment in favor of defendant-appellee the City of Philadelphia (the "City"), thus dismissing his lawsuit claiming the City violated his rights under the Fifth and Fourteenth Amendments to the Constitution. For the reasons expressed below, we will affirm.

## I.

We review the District Court's order granting summary judgment *de novo*. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). We apply the same standard as the District Court, reviewing the facts in the light most favorable to the non-moving party. Moore v. City of Philadelphia, 461 F.3d 331, 340 (3d Cir. 2006).

## II.

Because we write solely for the parties, we need not engage in a lengthy recitation of the legal and factual background.

The City commenced a civil action against Iverson in April 2002, seeking to force Iverson to abate an allegedly dangerous structural condition on property owned by Iverson at 6241 Market Street, Philadelphia (the "property"). After sending numerous warning letters to Iverson, the City moved before the Philadelphia Court of Common Pleas for a permanent injunction requiring Iverson to remedy multiple violations of the Philadelphia Property Maintenance Code by either repairing or demolishing the property. The Court of Common Pleas held seven hearings over the course of ten months, all but the last attended by Iverson. At the last hearing, on May 20, 2003, the Court of Common

2

Pleas issued an order (the "Demolition Order") authorizing the Department of Licenses and Inspections (or its contractors) to demolish the property.

Iverson did not move for reconsideration of the Demolition Order, nor did he appeal it. Instead, on June 20, 2003, exactly thirty days after the entry of the Demolition Order, Iverson filed a pro se "Motion to Vacate Default Judgment," though no default judgment was ever entered against him. Iverson asserts that he mailed a copy of his motion to the City Solicitor's office, but the record reflects that he mailed it to the wrong address. The City claims it was unaware of Iverson's motion and consequently never responded to it. Despite the fact that no default judgment had been entered against Iverson, the Court of Common Pleas entered an order granting Iverson's motion on July 31, 2003 (the "July 2003 Order"). Iverson did not inform Deputy City Solicitor Ann Pasquariello, attorney of record in the abatement action, that he had obtained such an order. Likewise, the City Solicitor was unaware of the entry of the July 2003 Order vacating the non-existent default judgment.[1] In April 2004, the property was demolished.

On December 30, 2004, Iverson, represented by counsel, filed an Amended

---

[1] Iverson argues essentially that because the July 2003 Order was docketed, the City Solicitor not only had knowledge of it but also was aware that it purported to vacate the Demolition Order. While we do not decide whether the City Solicitor or the Deputy City Solicitor was put on notice by virtue of the activity on the docket, we note that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). See *infra* Part IV.

3

Complaint[2] against the City claiming, pursuant to 42 U.S.C. § 1983, that the City

unlawfully demolished his property in violation of his Fifth and Fourteenth

Amendment rights to procedural due process of law. The City timely filed an Answer

and asserted a counterclaim for breach of implied contract, in which it sought to recover

the costs and expenses associated with the demolition of the property. The District Court

had jurisdiction over the Amended Complaint pursuant to 28 U.S.C. § 1331 and exercised

supplemental jurisdiction over the City's counterclaim under 28 U.S.C. § 1367.

At the close of discovery, the City moved for summary judgment. Iverson

opposed the motion. On June 28, 2005, the District Court granted the City's motion and

entered judgment in favor of the City and against Iverson on all of Iverson's claims.

Iverson filed a notice of appeal on July 28, 2005.

### III.

The District Court's June 28, 2005 Order disposing of Iverson's case did not

address the City's state law counterclaim. Therefore, the June 28, 2005 Order was not a

final order within the meaning of Federal Rule of Civil Procedure 54(b).[3] Subsequent to

---

[2] The initial Complaint was filed on May 25, 2004. On October 19, 2004, the City's motion to dismiss was granted without prejudice to allow Iverson to correct certain pleading deficiencies.

[3] Rule 54(b) provides:

> When more than one claim for relief is presented in an action,
> whether as a claim, counterclaim, cross-claim, or third-party
> claim, or when multiple parties are involved, the court may
> direct the entry of a final judgment as to one or more but

4

the filing of Iverson's appeal, however, the parties stipulated to a dismissal without prejudice of the City's counterclaim. The District Court approved the stipulation which was filed on November 28, 2005, and closed the case.

Ordinarily we do not have jurisdiction under 28 U.S.C. § 1291 of an appeal from an order partially adjudicating a case when a party has asserted a claim in the district court which it has voluntarily dismissed without prejudice. Erie County Retirees Ass'n v. County of Erie, Pa., 220 F.3d 193, 201 (3d Cir. 2000). "Given the strong policy against piecemeal litigation that underlies the finality requirement of § 1291, we have adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed *without prejudice*." Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 438 (3d Cir. 2003). For this reason, *sua sponte*, we directed the parties to address

---

> fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

5

whether this appeal is taken from an order which is final within the meaning of 28 U.S.C. § 1291 or which is otherwise appealable at this time. Only Iverson responded that appellate jurisdiction exists because adjudicating the federal claim in favor of the City effectively terminated the action in federal court; the City did not accede to our request for further briefing, perhaps intending to rest on its previous statement that it believed dismissing its counterclaim without prejudice vests this Court with appellate jurisdiction. (Br. in Opp. at 3 n.1.).

We agree. The City can pursue its state law claim against Iverson, but "[can] do so only in state court, as there would be no basis for the district court to exercise jurisdiction over such a reinstituted action." Erie County Retirees, 220 F.3d at 202. "[A] case dismissed without prejudice that cannot be reinstituted [in federal court] is in the same position as a case dismissed with prejudice in that both classes of cases have reached finality." Morton Int'l Inc. v. A.E. Staley Mfg. Co., 460 F.3d 470, 477 (3d Cir. 2006). Accordingly, the finality requirement of § 1291 is satisfied, and we have jurisdiction over this appeal.

IV.

Turning to the substantive merits, because Iverson has neither alleged nor demonstrated any action on the part of the federal government with respect to the demolition of his property, we affirm the District Court's decision to grant summary judgment on Iverson's claim that his Fifth Amendment right to due process was violated.

As for Iverson's claim that the City violated his right to procedural due process

6

under the Fourteenth Amendment, the District Court concluded, as a matter of law, that Iverson failed to establish the necessary elements for municipal liability to attach.  We agree.

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.  Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)).

To withstand summary judgment, Iverson must demonstrate not only the existence of a policy or custom, but also its connection to his constitutional injury.  A government's policy is established when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law."  Id. (quoting Monell, 436 U.S. at 690)).

We have recognized that "an unconstitutional policy could be inferred from a

7

single decision taken by the highest officials responsible for setting policy in that area of the government's business." Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003) (quoting City of St. Louis v. Praprotnik, 485 U.S.112, 123 (1988)); see also Pembaur, 475 U.S. 469. "To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 405 (1997).

Iverson argues that City Solicitor intentionally ignored a court order which had the effect of causing the demolition of his property. Iverson avers that "[t]he sole question before the Court is whether [he] has established scienter-like evidence of deliberate indifference on the part of a policy maker." (Br. at 6.) While Iverson has certainly articulated the framework for analysis, as the District Court correctly recognized, Iverson has failed in wholesale fashion to support his claim. Iverson does not point to any evidence, other than his own conclusory statements, demonstrating that the City Solicitor made the ultimate decision to demolish Iverson's property. There is nothing in the record that causally connects the City Solicitor to the demolition of Iverson's property. In other words, Iverson has failed to adduce any evidence that the City Solicitor deliberately ordered the demolition of Iverson's property in the face of a court order to the contrary.

Furthermore, although Iverson points to the City Solicitor as being the highest city official involved in the decision to demolish his property, the City Solicitor does not

8

possess final policymaking authority over whether to demolish a building deemed a hazardous condition. "The question of who is a 'policymaker' is a question of state law. In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action." Andrews, 895 F.2d at 1481 (citing Praprotnik, 485 U.S. at 142). Here, the City Solicitor heads the City Law Department, 351 Pa. Code § 3.3-101, and is vested with the power and duty to "furnish legal advice . . . to all officers, departments, boards and commissioners concerning any matter or thing arising in connection with the exercise of their official powers or performance of their official duties"; to "represent the City and every officer, department, board or commission in all litigation"; and to "take such steps and adopt such means as may be necessary to enforce . . . [City] ordinances." 351 Pa. Code § 4.4-400. The City Solicitor's authority to advise, to render legal services, and to enforce ordinances does not extend to creating municipal policy regarding property demolitions, and if the City Solicitor is not the final policymaker, certainly the Deputy City Solicitor, one of over one hundred attorneys working in the Law Department, is not.

Even if the City Solicitor were the final policymaker for the purposes of a § 1983 claim, Iverson's bald assertion that the City Solicitor intentionally ignored the July 2003 Order which vacated the non-existent default judgment is completely without basis in the record. Iverson cannot withstand summary judgment by mere reliance on unsupported assertions, suspicions or conclusory allegations. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981). Considering the record in a light most favorable to Iverson, Iverson has failed

9

to demonstrate any genuine issue of fact as to whether the City Solicitor acted with scienter-like indifference to the July 2003 Order.

V.

Accordingly, for the foregoing reasons, we will affirm the District Court's Order of June 28, 2005 granting summary judgment in favor of the City of Philadelphia.

10