NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4115
_____

In re: Asbestos Products Liability Litigation (No. VI)

CATHY BAXLEY, Individually and as Personal
Representative of the Estate of Jimmie Williams,
Appellant
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cv-63922)
(E.D. Pa. No. 2-01-md-00875)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 10, 2014

Before: FISHER, COWEN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: July 31, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Cathy Ann Baxley, who appears both individually and as the personal

representative of the estate of Jimmie Williams, appeals the District Court's grant of

summary judgment to Appellee Georgia-Pacific LLC ("Georgia-Pacific"). We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In August 2008, decedent Jimmie Williams was diagnosed with mesothelioma, and passed away from the disease the next month. Baxley claims that Williams's illness was caused by a Georgia-Pacific product containing asbestos that he was exposed to in the course of performing substantial home remodeling in the 1970s.[1]

Williams's son, Jimmie Williams, Jr., testified in a deposition that over the course of three or four weeks in 1974, his father performed various repairs and renovations around their home in Virginia, such as removing wood paneling and putting up sheetrock. The younger Williams was eleven years old at the time. He testified that Williams used a dry-mix Georgia-Pacific all-purpose joint compound that came in a gold bag with a red label, approximately one to two feet in height and weighing about 45 pounds. Williams would mix the dry compound with water and apply it to the wall, and then sand it down once it had dried. In the course of this activity, he inhaled dust from the product.

---

[1] Baxley also alleged that Williams was exposed to asbestos products while working at the shipyard in Newport News, Virginia. She has not appealed the District Court's grant of summary judgment to Georgia-Pacific on this claim.

Williams, Jr. testified that he could not recall any labels, logos, or wording on the bag except for "Georgia-Pacific," that he did not know where his father bought it, and that he did not know whether the product contained asbestos. Williams, Jr. also testified that his father and grandfather performed various home repairs throughout 1975 and as late as 1979, for which they used Georgia-Pacific joint compound, but he could not recall any particular markings or labels on the product, whether it contained asbestos, or where it had been purchased. At one point in the deposition, counsel showed Williams, Jr. a photograph of a bag of Georgia-Pacific all purpose joint compound, which Williams Jr. identified as the product he recalled from his childhood.

Georgia-Pacific submitted an affidavit from Howard Schutte, the company's designated corporate representative. Schutte worked at Georgia-Pacific from 1973 to 2008, and stated that dry joint compounds sold in Virginia in the 1970s were manufactured at either the company's Marietta, Georgia plant, or its Akron, New York plant. He stated that the Akron plant had an "asbestos free formulation[]" for Georgia-Pacific's "All Purpose Joint Compound" available "as early as September 26, 1973," and that the Marietta plant had one by May 20, 1974. App. at 160.

Baxley submitted as evidence testimony from Oliver E. Burch, former General Sales Manager for Georgia-Pacific's Gypsum Division, which was apparently given in a deposition for a separate lawsuit. Burch stated that, by approximately 1975, all Georgia-Pacific products that did *not* contain asbestos were labeled "asbestos free." App. at 162.

3

Baxley also introduced a number of Georgia-Pacific company memos. A June 17, 1974 memo directed that "asbestos free" labels be affixed to vinyl-based joint cement products produced at the Acme[2] and Marietta plants, and to be used at the other plants as vinyl-based products replaced asbestos-containing products. A July 19, 1974 memo indicated that the dry powder casein products manufactured at the Akron and Chicago plants still contained asbestos. A February 24, 1975 letter from Georgia-Pacific's Gypsum Division to the Sherwin-Williams Company indicated that Georgia-Pacific's all purpose joint compound contained 4.5% asbestos. A July 16, 1975 intra-company memo contained an "up-to-date" list of all Georgia-Pacific joint cement products, broken down by plant, that indicated the product name and type, and whether it contained asbestos. That memo indicates that as of July 1975, the all-purpose casein starch joint products manufactured in Akron and Marietta both contained asbestos.

## II.

The District Court had jurisdiction over this Multidistrict Litigation pursuant to 28 U.S.C. § 1407, removal jurisdiction pursuant to 28 U.S.C. § 1441, and federal agency or officer jurisdiction pursuant to 28 U.S.C. § 1442.[3] We have jurisdiction over the District

---

[2] The record does not appear to disclose in what state the Acme plant was.
[3] The U.S. District Court for the District of South Carolina denied Baxley's motion to remand to state court based on a colorable claim by a co-defendant that the allegedly tortious conduct took place under color of office. *See* App. at 76.

4

Court's order granting summary judgment to Georgia-Pacific pursuant to 28 U.S.C. § 1291.[4]

We exercise plenary review of the District Court's order granting summary judgment. *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013). Summary judgment is appropriate when "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A fact is material if, under the governing law, it might affect the outcome of the case, and a dispute over that fact is genuine if there is sufficient evidence supporting the claimed dispute "'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). We view all facts "in the light most favorable to the nonmoving party." *Id.*

---

[4] Under 28 U.S.C. § 1291, we have jurisdiction only over a district court's final order, and an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013) (quoting *Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 400 (3d Cir. 2010)). On October 18, 2013, we alerted the parties that this case was being considered for dismissal due to a possible jurisdictional defect, insofar as the orders appealed from did not dismiss all claims as to all parties. Baxley and Georgia-Pacific (and Honeywell International Inc., which has since been dismissed through agreement of the parties) have advised us that all other defendants have been dismissed by Baxley, have agreed to settle, or were granted summary judgment by the District Court. We are thus satisfied that, under our practical finality rule, we have jurisdiction. *See Morton Int'l., Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006) (recognizing "the general rule that once all claims against all parties have been dismissed a prior order will become final for purposes of appeal under 28 U.S.C. § 1291").

III.

The sole issue presented in this appeal is whether Baxley has adduced sufficient evidence to raise a genuine dispute of material fact on the issue of whether Williams was exposed to asbestos from a Georgia-Pacific product. The District Court concluded that she had not, and we agree.[5]

Though this case was resolved in the Eastern District of Pennsylvania, it originated in South Carolina, and it is that State's substantive law that governs our analysis here. South Carolina applies the "frequency, regularity, and proximity test" for determining whether asbestos exposure is actionable. *Henderson v. Allied Signal, Inc.*, 644 S.E.2d 724, 727 (S.C. 2007) (internal quotation marks omitted) (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986)). Under that test, "'[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Id.* (quoting *Lohrmann*, 782 F.2d at 1162).

The evidence Baxley has adduced to demonstrate Williams's exposure to an asbestos-containing Georgia-Pacific product is speculative at best, and "'[s]peculation

---

[5] Georgia-Pacific urges that we dismiss this appeal without reaching the merits based on Baxley's supposed failure to comply with Local Appellate Rule 107.2 by timely filing certain documents. However, as both parties recognize, we granted an extension of time to Baxley on November 5, 2013, with which she complied. We thus decline to dismiss this case for failure to prosecute.

does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (emphasis omitted) (quoting *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)). The memoranda introduced by Baxley, although they indicate that some Georgia-Pacific products sold at the time still contained asbestos, do not preclude the possibility that Williams purchased an asbestos-free product. This means Williams, Jr.'s identification of the product is critical to Baxley's case, but he could not recall any of the labels or wording, beyond the name Georgia-Pacific, on the product with which his father worked.[6] Baxley makes much of Burch's testimony, which suggests that by the mid-1970s, if a product were asbestos-free the label would say so, arguing that "the obvious and reasonable inference is that packages not labeled 'asbestos-free' did in fact contain asbestos." Baxley Br. at 9. Perhaps that is the obvious and reasonable inference, but that hardly advances Baxley's claim because Williams, Jr. did

---

[6] Consider the following passage from Williams, Jr.'s deposition:

Q: Do you remember any of the wording or lettering on [the package?]
A: It said Georgia Pacific.
Q: Ok. Any other logos or anything else?
A: No, sir.
. . .
Q: Ok. And it was – was it – did you see any labels on it or wording other than Georgia Pacific?
A: No, sir.

App. at 136.

7

not testify that the product his father used *did not* say "asbestos free;" he testified that *he did not know* whether it said "asbestos free."[7]  The package could have said "asbestos free," or it could not have; there is no evidence from which a jury could decide one way or the other and to ask them to do so would be to invite pure speculation.  Summary judgment was thus appropriate.

IV.

Because we agree with the District Court that Baxley has failed to produce sufficient evidence to raise a genuine factual dispute for trial, we will affirm.

---

[7] *See, e.g.*, App. at 139 ("Q: Okay. And other than the words 'Georgia Pacific,' you don't recall any words – do you recall any warning signs or labels on it? A: No, sir. Q: Do you recall anything about whether it had asbestos or didn't have asbestos in it? A: No, sir.").