**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1381
_____

JANE DOE,
THE VICTIM IN THE "DISNEY
WORLD GIRL" OR "INTERNET GIRL"
CHILD PORNOGRAPHY SERIES
formerly known as MASHA ALLEN

v.

ALAN HESKETH; RICHARD CARINO; GEORGE ELIOT
KABACY; MATTHEW ALAN MANCUSO; DAN W.
JOACHIM; RANIER GEROW; DOUGLAS MICHAEL
STUM; RICHARD SCHEIRING; CHARLES LINDAUER;
JOSEPH MARCUS; WILLIAM GEORGE GAMMON;
STEPHEN JABBOUR; ALBERT NOAH ABRAMS;
MAYER FINKELSTEIN, SUED IN THEIR INDIVIDUAL
CAPACITIES AND AS REPRESENTATIVES OF A
CLASS OF PERSONS SIMILARLY SITUATED

Jane Doe,
    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(E.D. Pa. No. 2-13-cv-04935)
District Judge: Honorable Stewart Dalzell

Argued:  October 28, 2015
_____


Before:  GREENAWAY, JR., SCIRICA and ROTH, *Circuit Judges*.

(Filed: July 5, 2016)

Sidney L. Moore, III, Esq.          [ARGUED]
The Moore Law Firm
1201 Peachtree Street
400 Colony Square, Suite 2000
Peachtree, GA 30361
        *Counsel for Appellant*

Stanley W. Greenfield, Esq.          [ARGUED]
Greenfield & Kraut
1040 Fifth Avenue
Pittsburgh, PA 15219
        *Counsel for Appellee*
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Section 2255 of Title 18 of the U.S. Code (also known as Masha's Law) provides a civil right of action in federal district court to victims of several federal crimes, including sexual exploitation of a child and various child pornography offenses. This case requires us to decide whether a restitution award for a criminal offense bars a later-filed civil claim by a victim under § 2255 based on that same offense. Because we find that § 2255 permits such a claim, and collateral estoppel is not appropriate in this case, we will reverse the District Court's judgment dismissing the plaintiff's complaint. We will also vacate the District Court's judgment setting aside a default entered against the defendant and remand for further proceedings.

## I. BACKGROUND

### A. *Factual Background*

Plaintiff–Appellant Jane Doe (formerly known as Masha Allen) was adopted from Russia by Defendant–Appellee Matthew Alan Mancuso when she was five years old. Over the course of the following five years, Mancuso sexually abused Doe and documented the abuse in a series of photographs and videos. Mancuso copied these media and distributed them through chat rooms on the internet in exchange for media documenting the sexual abuse of other children. Mancuso's photographs and videos became popular among viewers of child pornography and he was subsequently arrested after a law enforcement investigation identified him as Doe's abuser. Following his arrest, a federal grand jury in the Western District of Pennsylvania returned a two-count indictment against Mancuso: count one

3

charged Mancuso with sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a); and count two charged Mancuso with possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B).

Mancuso entered into a plea agreement. He agreed to plead guilty to count one of the indictment (sexual exploitation) and the government agreed to dismiss count two (possession of child pornography). In the plea agreement, Mancuso made several affirmations that would affect his sentence. He "acknowledge[d] his responsibility for the conduct charged in Count Two of the Indictment" and "stipulate[d] that the conduct charged in that count may be considered by . . . the District Court in imposing sentence." J.A. 216a. He also agreed to pay "mandatory restitution" to Doe "under the Victim-Witness Protection Act, 18 U.S.C. §§3663, 3663A and 3664" in the amount of $200,000. J.A. 216a–217a.

Pursuant to the plea agreement, the sentencing court ordered Mancuso to fully fund a trust for the benefit of Doe in the amount of $200,000 "pursuant to Title 18, United States Code, Sections 2259(a) through 3663, 3663[A] and 3664."[1]

---

[1] 18 U.S.C. § 3663 codifies the Victim and Witness Protection Act ("VWPA"). The VWPA confers discretion upon a sentencing court in the award of restitution: "The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense . . . ." 18 U.S.C. § 3663(a)(1)(A).

4

18 U.S.C. § 3663A codifies the Mandatory Victims Restitution Act ("MVRA"). The MVRA instructs a sentencing court to award mandatory restitution for, inter alia, "crime[s] of violence." *Id.* § 3663A(c).

18 U.S.C. § 2259 provides for mandatory restitution to victims of, inter alia, the crimes codified at 18 U.S.C. §§ 2251–2252C. It provides:

> Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter. . . . The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court . . . . [T]he term "full amount of the victim's losses" includes any costs incurred by the victim for -- (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense. . . .

> A court may not decline to issue an order under this section because of . . . the fact that a victim has, or is entitled to, receive compensation for

Sentencing Tr. at 19, *United States v. Mancuso*, No. 2:03-cr-00161-TFM (W.D. Pa. Feb. 5, 2004).

## B.     *Procedural History*

Ten years after Mancuso's criminal conviction, on August 23, 2013, Doe filed the present civil suit under 18 U.S.C. § 2255 against a purported class of defendants in the United States District Court for the Eastern District of Pennsylvania.     Doe named fourteen purported class representative defendants in her complaint, including Mancuso, and alleged that each defendant had violated a predicate statute under § 2255.[2]  Doe sought damages against

> his or her injuries from the proceeds of insurance or any other source.

*Id.* § 2259(a), (b)(1), (b)(3), (b)(4)(B).

Each of these statutory restitution schemes is governed by the procedures set forth at 18 U.S.C. § 3664, which provides:  "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  *Id.* § 3664(f)(1)(A).

[2] Before filing this appeal, Doe settled with one purported class representative defendant who was dismissed from the action with prejudice.  The District Court dismissed all the remaining purported class representative defendants except Mancuso from the action for lack of personal jurisdiction.  The District Court did not reach the issue of class certification.

Mancuso for his possession and distribution of child pornography depicting her.[3]

On December 5, 2013, Mancuso was served with process, but over the following nine months no counsel entered an appearance on his behalf and he did not file a responsive pleading. On September 22, 2014, the District Court clerk docketed Doe's application for an entry of default against Mancuso. The next day, the clerk entered a default against Mancuso for failure to plead or otherwise defend.

Following the entry of default, Mancuso's attorney was admitted pro hac vice to the Eastern District of

---

[3] In her First Amended Complaint, Doe erroneously alleged that Mancuso pleaded guilty to "possession and distribution of child pornography." J.A. 84a. Count two of Mancuso's indictment charges possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), but that charge was dismissed by prosecutors pursuant to Mancuso's plea agreement.

On appeal, Doe reiterates that she seeks damages for Mancuso's possession and distribution of child pornography, but erroneously suggests in her briefing that both possession and distribution formed the basis for the charge against Mancuso that was dismissed. Appellant Br. at 14–15. Mancuso's indictment does not contain a distribution charge and counsel for Doe corrected the erroneous briefing statement at oral argument. As we go on to explain, whether Doe is seeking damages for Mancuso's convicted charge, dismissed charge, or uncharged conduct is of no import to our analysis.

Pennsylvania and promptly filed a motion for relief from default judgment[4] and a motion to dismiss for failure to state a claim. Mancuso argued that Doe's civil claim against him was barred by her prior receipt of restitution in his criminal case because the sentencing judge intended to fully compensate Doe for both the convicted and dismissed charges in his indictment. The District Court agreed and, finding that Mancuso had a meritorious defense to Doe's suit, set aside the default entered against Mancuso and granted his motion to dismiss. This appeal followed.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Doe's civil suit under 28 U.S.C. § 1331. We have jurisdiction over this appeal from the District Court's judgment dismissing Doe's complaint against Mancuso under 28 U.S.C. § 1291. Given the unusual procedural posture in this multi-party action, we take this opportunity to explain our appellate jurisdiction under § 1291.

Doe named fourteen defendants in her complaint, including Mancuso. The District Court dismissed one defendant with prejudice pursuant to a settlement, and

---

[4] Although Mancuso filed a motion for relief from default judgment with the District Court, the District Court clerk had only entered a simple default against him. Thus, we will construe the District Court's judgment granting Mancuso's motion for relief from default judgment as a vacatur of the default.

dismissed all the remaining defendants except Mancuso for lack of personal jurisdiction without a designation that the dismissals were with or without prejudice. In order to examine our appellate jurisdiction, we assume without deciding that the dismissals for lack of personal jurisdiction were without prejudice.

Ordinarily, we do not have jurisdiction under § 1291 of an appeal in which any defendant was dismissed below by the district court without prejudice. *Erie Cty. Retirees Ass'n v. Cty. of Erie*, 220 F.3d 193, 201 (3d Cir. 2000). In such a case, the district court's disposition of the case is not deemed sufficiently "final" within the meaning of § 1291 because the plaintiff can re-file her claim against the dismissed defendant. However, we have observed an exception to this general rule in a situation where a claim dismissed without prejudice cannot be re-filed, such as a claim for which the statute of limitations has run. *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005). We have also observed an exception in a situation where a plaintiff renounces any intention to reinstate litigation on a claim dismissed without prejudice. *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). In these cases, the district court's disposition of the case is final because we are satisfied that the dismissed claims will not be re-filed.

These exceptions fit well within the policies of § 1291, which we have observed to be "minimizing the possibility of piecemeal appeals, according due deference to trial court judges, and promoting the conservation of judicial resources." *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 561 (3d Cir. 1997). If a dismissed claim will not be re-filed, there will be no further proceedings in front of the district court judge with respect to that claim and thus there is no

9

possibility of a future piecemeal appeal and the attendant waste of appellate judicial resources.

In this case, the District Court concluded that it lacked personal jurisdiction with respect to the dismissed defendants and Doe indicated in supplemental briefing her belief that the District Court's dismissal operates to bar her from reasserting the dismissed claims in the District Court. Accordingly, Doe has renounced any intention to amend her complaint in the District Court with respect to her allegations of jurisdiction in Pennsylvania against the dismissed defendants. *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 434 (3d Cir. 2000) (finding that a stipulation by parties filed after a notice of appeal rendered an earlier district court order "final and appealable"). Doe also indicated at oral argument an intention to re-file against the dismissed defendants in other courts in their home states in new actions. Although Doe did not renounce any intention to re-file against the dismissed defendants, we see no meaningful distinction to be made for purposes of § 1291 between a case where a claim will not be re-filed at all and a case where, as here, the plaintiff has represented to our satisfaction that she will not re-file a claim in the district court at issue.

Our conclusion finds support in our precedent. In *Beazer East*, we held that:

> Where the effect of a district court decision is to accomplish all that the parties asked the court to accomplish, and where the parties agree there cannot be—and, by court order, there will not be—any further proceedings in the district court as part of the same action, the district court's

10

> decision must be considered final for purposes
> of § 1291.

124 F.3d at 560. We similarly observed in *GFL Advantage Fund, Ltd. v. Colkitt* that "[e]ven dismissals without prejudice have been held to be final and appealable if they end [ ][the] suit so far as the District Court was concerned . . . ." 272 F.3d 189, 198 n.3 (3d Cir. 2001) (second and third alterations in original) (internal quotation marks omitted) (quoting *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 220 (3d Cir. 1994)).[5]

---

[5] We recognized an exception to this principle of finality in *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470 (3d Cir. 2006) for cases where district court proceedings have concluded but may be reinstated in the future such that we treat the later action as part of the prior action for purposes of determining finality. In *Morton*, the district court had dismissed claims against several defendants without prejudice pending the outcome of non-binding alternative dispute resolution ("ADR") and expressly noted that the dismissed claims could be re-filed if the ADR failed. *Id.* at 478. In finding a lack of appellate jurisdiction, we concluded that the district court's disposition of the case was not final because, even though the plaintiff's potential re-filing against the dismissed defendants would technically occur in a separate action, any "subsequently-initiated litigation effectively will be part of the original action and controversy, albeit with a new caption and docket number." *Id.* at 479.

The present case does not fall within the exception in *Morton*. If Doe re-files against the dismissed defendants, the new actions will be filed in other courts and so the District Court here has "accomplish[ed] all that the parties asked the

11

Other circuits have endorsed this principle as well. *See Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006) ("After the voluntary dismissal [without prejudice], there was nothing left for the district court to resolve, and the suit had ended as far as that court was concerned, thereby creating a final judgment."); *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 875 (7th Cir. 2005) ("[T]he fact '[t]hat the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit as far as the District Court was concerned.'" (second alteration in original) (quoting *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949))); *De Tie v. Orange Cty.*, 152 F.3d 1109, 1111 (9th Cir. 1998) (concluding that an order dismissing an action without prejudice was final for purposes of appeal because "[t]he action . . . [was] over as far as the district court [was] concerned").

In assessing whether we have appellate jurisdiction, we give § 1291 a "practical rather than technical construction." *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996) (internal quotation marks omitted) (quoting *Carr v. Am. Red Cross*, 17 F.3d 671, 678 (3d Cir.

---

court to accomplish." *Id.* at 479 (alteration in original) (quoting *Beazer E.*, 124 F.3d at 560). Accordingly, there is no "potential for the district court to revisit the case," *id.* at 480, and so any later actions filed by Doe in other courts cannot fairly be considered part of the present action. If any litigation takes place with respect to the dismissed defendants, it will occur in truly separate actions in other courts.

1994)).  Here, Doe's stipulation that she will only re-file the dismissed claims in other actions in other courts satisfies us that the District Court proceedings in this case are concluded and will not be reinstated.  *See Beazer E.*, 124 F.3d at 557 ("[A]n appellate court must determine whether, at the time it is examining its jurisdiction, there remain unresolved issues to be adjudicated in the district court.").  As such, the policies underlying § 1291 are not implicated—there is no risk of further proceedings on the dismissed claims in front of the District Court and thus no risk of this Court hearing piecemeal appeals from the District Court proceeding.[6]

Thus, we conclude that the District Court's disposition with respect to the dismissed defendants in this action is final within the meaning of § 1291 and permits us to hear Doe's appeal.[7]

---

[6] In fact, based on the allegations in Doe's complaint, all of the dismissed defendants' home states appear to be outside of the Third Circuit and thus any future appellate proceedings from the re-filed actions would not take place in this Court.  Denying appellate jurisdiction here would leave us in the bizarre situation of waiting for each of Doe's twelve future suits to reach final judgment in other Circuits before we hear her present appeal—even though those suits would have no effect whatsoever on her appeal before this Court.  This result would serve none of § 1291's purposes to avoid piecemeal appeals, accord deference to the District Court, and conserve judicial resources.

[7] Mancuso argues that the District Court's dismissal of Doe's claim against him cannot be a final order because the District Court did not issue a Rule 54(b) certification.  Rule

13

We exercise plenary review over the District Court's order dismissing Doe's complaint for failure to state a claim. *Rea v. Federated Inv'rs*, 627 F.3d 937, 940 (3d Cir. 2010). In our review, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, Doe may be entitled to relief. *Id.* As a judgment setting aside an entry of default is within the District Court's discretion, we review that judgment for abuse of discretion. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984).

---

54(b) provides: "[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Rule 54(b), by its own terms, applies only if a district court enters final judgment with respect to one defendant, but does not enter final judgment with respect to the remaining defendants. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). As we conclude above, we consider the District Court's dismissals for lack of personal jurisdiction in this case to constitute final judgments for § 1291 purposes and thus Rule 54(b) is not applicable. *See Beazer E.*, 124 F.3d at 561 n.8 ("While unresolved claims existed, there were no unresolved claims before [the district court] that required further district court proceedings. For this reason, Rule 54(b) certification was unnecessary to allow [the] appeal.").

**III.  ANALYSIS**

We first examine the text of 18 U.S.C. § 2255 and its place in Congress's remedial scheme for child victims of sex crimes.  We then address whether collateral estoppel is applicable to Doe's claim.[8]  Finally, we turn to the default entered against Mancuso in the court below.

*A.  Section 2255 and Congress's Remedial Scheme*

In construing a statute, we are guided by the principle that "every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).  When the statutory language is unambiguous, our inquiry is complete and we ordinarily do not consider statutory purpose or legislative history.  *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013).  In such a case, only in the "rare circumstances" where a "literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters . . . or where the result would be so bizarre that Congress could not have intended it" is further inquiry warranted.  *In re Segal*, 57 F.3d 342, 346 (3d Cir. 1995) (internal citations and quotation marks omitted).

---

[8] On appeal, the parties dispute whether the District Court was correct in finding that the sentencing court's restitution order compensated Doe for both the convicted and dismissed charge in Mancuso's indictment.  Because we find that § 2255 permits a victim to bring a suit based on a predicate offense even where she has received restitution for that offense, we need not reach that issue.

The operative provision of § 2255 provides:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a).[9]  The language of the statute makes clear that the civil right of action it provides is available to

_____

[9] The civil right of action in § 2255 was first passed in 1986. Child Abuse Victims' Rights Act of 1986, Pub. L. No. 99-500, § 703(a), 100 Stat. 1783, 1783-74 to -75 (1986). It was amended in 1998 to cover a wider array of predicate crimes. Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 605, 112 Stat. 2974, 2984 (1998). It was amended again in 2006 (at which time it became known as Masha's Law) to increase minimum statutory damages from $50,000 to $150,000 and make clear that an adult could bring suit based on a predicate crime that took place while she was a minor. Masha's Law, Pub. L. No. 109-248, § 707, 120 Stat. 587, 650 (2006). It was amended a final time in 2013 to again widen the array of predicate crimes and increase the statute of limitations from six years to

16

"any person" who, while a minor, was a victim of a violation of a predicate statute resulting in personal injury.

We faced a similar question of statutory interpretation in *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994). In that case, the federal government had entered into a consent decree with a group of defendants involving the cleanup of a parcel of land containing hazardous materials. *Id.* at 1178. The government later entered into another consent decree with a second group of defendants involving the cleanup of that same site. *Id.* at 1179. The trustees of the parcel of land, on behalf of the first group of defendants, moved to intervene under CERCLA in the government's second suit. *Id.* The relevant provision of CERCLA provided:

> In any action commenced under this chapter or under the Solid Waste Disposal Act in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest . . . .

*Id.* at 1180 n.6 (quoting 42 U.S.C. § 9613(i)).

The government, citing legislative history, contended that intervention was limited to persons who sought to raise health or environmental concerns. *Id.* at 1180–81. In

ten years. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1212(a), 127 Stat. 54, 143 (2013).

17

rejecting that limited construction of the statute, we observed that the plain language of the intervention provision did not so limit or qualify the right to intervene. *Id.* at 1180. We expressed doubt that "Congress would have used the phrase 'any person may intervene' or 'any action under this chapter' if it had intended to restrict intervention to only those persons raising a particular, but unidentified, claim." *Id.*

Similarly here, the text of 18 U.S.C. § 2255 in no way limits the availability of the civil right of action to cases in which a victim has not been compensated in the past by a restitution order. We therefore find the statute to be unambiguous for our purposes. *Cf. Doe v. Boland*, 630 F.3d 491, 498 (6th Cir. 2011) (rejecting an argument that § 2255 was not intended to cover an expert witness's computer-aided creation of child pornography images because "the words Congress chose [in § 2255] offer no basis for drawing this kind of line, and it is not our place to second guess the judgment Congress put into law").

Looking beyond the text of the statute here to limit the statute's application is not appropriate where allowing a civil action under § 2255 to a child victim of a sex crime after her receipt of criminal restitution cannot fairly be labelled a bizarre result. In fact, such a construction of § 2255 is consistent with Congress's remedial scheme for child victims of sex crimes. The procedures governing the award of mandatory restitution under § 2259 provide: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil

18

proceeding . . . ." 18 U.S.C. § 3664(j)(2).[10] They further provide: "A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding . . . brought by the victim." *Id.* § 3664(*l*).

With these provisions, Congress not only contemplated that a victim who had received restitution could file a subsequent civil action, but also provided procedures for that very situation. These provisions ensure that a victim will not have to re-litigate the conduct forming the basis of a criminal conviction in a subsequent civil action and a defendant will not be required to pay double damages for the same loss if a subsequent civil action is successful. We can conceive of

---

[10] The District Court concluded that several federal appellate cases examining § 3664(j)(2) stand for the proposition that the restitution laws do not permit double recovery by victims. *Doe v. Hesketh*, 77 F. Supp. 3d 440, 450 (E.D. Pa. 2015). However, from that simple proposition, the District Court erroneously concluded that the MVRA does not permit victims to bring a civil suit after a restitution award has been made. *Id.*

As Doe correctly observes, § 3664(j)(2) does not operate to bar a later-filed civil suit. To the contrary, it expressly contemplates such a suit and, by providing a set-off, ensures that any duplicative recovery in such a suit does not violate the common law principle against double recovery. We do not now decide to what extent, if any, the sentencing court's restitution order compensated Doe for the "same loss," 18 U.S.C. § 3664(j)(2), that underlies her civil claim.

19

several reasons for Congress's determination that a victim who has already received restitution should be permitted a subsequent civil suit.

Congress may have wanted to give victims a chance to prove a higher level of damages than that which a sentencing court found during a limited factfinding proceeding as part of sentencing.[11] A victim's participation in a sentencing court's determination of restitution is limited to conferring with the government, *id.* § 3664(d)(1), submitting information to a probation officer, *id.* § 3664(d)(2)(A)(vi), or potentially providing testimony at the sentencing court's discretion, *id.* § 3664(d)(4).[12] A subsequent civil action allows a victim to fully litigate the question of her damages to achieve compensation for the full amount of her damages. And it allows a victim the opportunity to prove those damages in front of a jury—a procedure that is unavailable in the context of criminal restitution in sentencing proceedings, *id.* § 3664(e). *See* U.S. Const. amend. VII; *Curtis v. Loether*,

---

[11] The parties dispute whether the sentencing court's restitution order compensated Doe for her full damages. We will not resolve this question of fact at this stage of the proceedings.

[12] The Crime Victims' Rights Act ("CVRA") provides victims with additional rights in the restitution process, including the right to be "reasonably heard" at sentencing and the right to "full and timely restitution." 18 U.S.C. § 3771. However, the CVRA was passed into law on October 30, 2004, which was over eight months after Mancuso's sentencing. Justice for All Act of 2004, Pub. L. No. 108-405, § 102(a), 118 Stat. 2260, 2261 (2004).

415 U.S. 189, 194 (1974) ("The Seventh Amendment [applies] to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.").

The opportunity for a victim to fully litigate the question of her damages in a civil action is even more important for those victims who choose not to participate in a sentencing court's determination of restitution. *See* 18 U.S.C. § 3664(g)(1) ("No victim shall be required to participate in any phase of a restitution order."). By permitting a later civil suit, Congress may have wanted to shield victims from participating in the criminal sentencing of their victimizers while the victims are so close in time to the damaging effects of the offense. This concern is particularly acute in child pornography cases as victims are children who have often suffered horrific abuse and, as such, it may not be desirable to have them participate in a sentencing proceeding.[13] Section 2255's statute of limitations protects such children by providing an extension in cases where a "victim is still a

---

[13] Congress's recognition that the same may be true in some civil suits is reflected in § 2255's statutory damages provision, which allows victims to obtain $150,000 in compensation without participating in a damages hearing if they so choose. *See Doe v. Boland*, 698 F.3d 877, 882 (6th Cir. 2012) ("The point of a minimum-damages requirement [in § 2255] is to allow victims of child pornography to recover without having to endure potentially damaging damages hearings. Were it otherwise, a fresh damages hearing might inflict fresh wounds, increasing the child's suffering . . . ." (emphasis omitted)).

minor when the . . . statute of limitations would otherwise have run." *Stephens v. Clash*, 796 F.3d 281, 287 (3d Cir. 2015); *see* 18 U.S.C. § 2255(b).

Civil actions, such as that provided in § 2255, also allow a victim to recover additional categories of damages not compensable as part of restitution. For example, a civil action allows a victim to recover for non-pecuniary damages, such as pain and suffering or mental and emotional distress, which may not be available under the restitution statutes. *See United States v. Berk*, 666 F. Supp. 2d 182, 192 n.9 (D. Me. 2009) (expressing doubt that the mandatory restitution provision in § 2259 was intended to permit restitution for pain and suffering); Melanie Reid & Curtis L. Collier, *When Does Restitution Become Retribution?*, 64 Okla. L. Rev. 653, 661 & n.31 (2012).

Certainly Congress could not have intended in providing a remedy the opposite situation where § 2255 was only available to victims who had not previously received restitution. Section 2259 provides for *mandatory* restitution to victims of the crimes codified at 18 U.S.C. §§ 2251–2252A, *see* 18 U.S.C. § 2259(a), which are all predicate offenses listed in § 2255 as forming the basis for a civil claim, *see* 18 U.S.C. § 2255(a). If we accept the District Court's conclusion that an award of restitution bars a later-filed claim under § 2255, then we would render § 2255 nothing more than a "dead letter" with respect to those predicate offenses. *United States v. Jersey Shore State Bank*, 781 F.2d 974, 977 (3d Cir. 1986).

Nor is our construction of the statute "demonstrably at odds with the intentions of its drafters." *In re Segal*, 57 F.3d at 346 (internal quotation marks omitted) (quoting *Taylor v.*

22

*Freeland & Kronz*, 938 F.2d 420, 424 (3d Cir. 1991)). At oral argument, counsel for Mancuso suggested that Congress intended § 2255 to be available only to those victims who had yet to receive payment in satisfaction of a prior criminal restitution award. However, Mancuso has pointed to no legislative history or other statutory provisions that evince such an intent. Moreover, it is unlikely that Congress could have reasonably concluded a victim would be more successful in obtaining satisfaction of a civil judgment than a criminal restitution order. *See* 18 U.S.C. § 3613A(a)(1) (permitting a district court to revoke a defendant's probation or term of supervised release, resentence a defendant, hold a defendant in contempt of court, enter an injunction against a defendant, or order a sale of property of a defendant in order to obtain compliance with a restitution order).

An examination of the legislative history of § 2255 does not provide any clear insight into whether Congress intended the civil right of action in § 2255 to be available to victims who had already received criminal restitution. Congressional findings at the time of § 2255's enactment describe a "lack [of] effective remedies under Federal law" for "exploitation victims." Child Abuse Victims' Rights Act of 1986, Pub. L. No. 99-500, § 702(3), 100 Stat. 1783, 1783-74 (1986). However, these findings were made prior to Congress's enactment of § 2259, which provided mandatory restitution for the "full amount of [a] victim's losses" to victims of the child pornography predicate offenses listed in § 2255. 18 U.S.C. § 2259(b)(1).

Statements by legislators at the time of recent amendments to § 2255 similarly do not speak on this question, but suggest that the law's general purpose is to provide both compensation to child pornography victims and

23

a measure of deterrence to possessors and distributors of child pornography. *See* 152 Cong. Rec. H5705-01 (daily ed. July 25, 2006) (statement of Rep. Gingrey) ("Currently, a person who illegally downloads music faces penalties in civil court that are three times as harsh as a person who downloads child pornography. This horrible inequity was the inspiration behind the introduction of Masha's Law . . . ."); *see also* 151 Cong. Rec. S14187-03 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry) ("This legislation increases the civil penalties recoverable by victims of child sexual exploitation, including internet child pornography, to at least $150,000. This increased penalty will serve as a deterrent to those who disseminate and possess child pornography, as well as a means of compensating victims of this terrible abuse."). We are satisfied that our construction of the statute to allow a victim who has received criminal restitution to bring a civil suit furthers these goals.

We therefore hold that 18 U.S.C. § 2255 permits a victim to bring a civil claim for the violation of a predicate statute even where that victim has previously received criminal restitution for the same violation of that statute for her purported full damages.[14]

---

[14] In reaching this holding, we recognize that the "amount paid to [the] victim under [the] order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim" in the civil action. 18 U.S.C. § 3664(j)(2).

*B.      Collateral Estoppel*[15]

Collateral estoppel prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding.  When examining the preclusive effect of a prior federal court determination, we apply federal law principles of collateral estoppel.  *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999).  Collateral estoppel is appropriate where:  "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."  *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002) (internal quotation marks omitted) (quoting *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992)).  As Doe was neither a party to Mancuso's prior criminal proceeding nor in privity with a party, and did not have a full and fair opportunity to litigate the question of her damages, we will not apply collateral estoppel to prevent Doe from

---

[15] Although the District Court did not explicitly examine the collateral estoppel effect of the sentencing court's determination of Doe's losses, we find it desirable to examine collateral estoppel in this case since we are uncertain as to the legal principle under which the District Court found Doe's claim was barred.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 303 n.73 (3d Cir. 2014).

25

litigating the question of her damages based on Mancuso's criminal conduct.[16]

Since Doe was not a party to Mancuso's criminal sentencing proceeding, collateral estoppel will only be appropriate if she was in privity with the government. We assess privity under the rubric laid out by the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880 (2008). *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310–12 (3d Cir. 2009). A nonparty will be found to be in privity with a party to a proceeding where:

---

[16] With respect to the first factor of the collateral estoppel test (identity of issue), collateral estoppel would only be appropriate if Doe sought to litigate an issue that was previously decided by the sentencing court in Mancuso's criminal proceeding. As we explain *supra* note 8, the parties dispute whether the sentencing court's restitution order compensated Doe for her damages with respect to the charge against Mancuso that was dismissed. Given our conclusion that Doe is not collaterally estopped on other grounds, we do not reach this question.

As to the second factor (finality of judgment), the sentencing court's restitution order is sufficiently "final" to be accorded preclusive effect because it conclusively determined Mancuso's restitution obligation. *See* 18 U.S.C. § 3664(o) ("A sentence that imposes an order of restitution is a final judgment . . . ."); *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209–10 (3d Cir. 2001).

1) the nonparty agrees to be bound by the determination of issues in an action between others;

2) a substantive legal relationship—i.e.[,] traditional privity—exists that binds the nonparty;

3) the nonparty was "adequately represented by someone with the same interests who [wa]s a party";

4) the nonparty assumes control over the litigation in which the judgment is rendered;

5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; [or],

6) the nonparty falls under a special statutory scheme that "expressly foreclos[es] successive litigation by nonlitigants."

*Id.* at 312–13 (second and fourth alterations in original) (quoting *Taylor*, 553 U.S. at 894–95). Doe is not in privity with the government under the two categories of privity applicable to this case—category three and category six.

The interests of a victim and the government in a restitution determination are not sufficiently similar for a finding of privity. A victim's interest in the context of restitution is undoubtedly to achieve the maximum amount of compensation for herself permissible under the law. A victim such as Doe may be willing to assume the time and cost to litigate the full extent of her damages in a trial as Doe has

27

chosen to do in her civil suit. By contrast, the interests of the government in the restitution context are necessarily affected by its responsibility to "represent the interest of society as a whole." *Ferri v. Ackerman*, 444 U.S. 193, 202–03 (1979); *see, e.g.*, *Berk*, 666 F. Supp. 2d at 186 n.3 (noting an "obvious conflict" between the position of two victims and the government in briefing before the court with respect to whether the mandatory restitution provision in § 2259 contains a proximate cause requirement for compensable losses).

Accordingly, the government has an interest in securing a plea agreement that is palatable to the defendant in order to avoid a lengthy and costly criminal trial in which it may not prevail and an interest in achieving speedy punishment for the purpose of deterrence. *See Brady v. United States*, 397 U.S. 742, 752 (1970) ("For the State there are . . . advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved . . . ."). These are not necessarily interests that the victim shares. *See Nationwide*, 571 F.3d at 313 ("Under the 'adequate representation' exception, the interests of the party and nonparty must be squarely aligned . . . .").

These varied interests are balanced by the government as it decides whether to accept a plea agreement with a given amount of restitution and render the government necessarily less interested in litigating extensively to have Mancuso pay the maximum amount of restitution permissible under the

28

law.[17]   The effect of these varied interests are particularly acute in the present situation as the child victim in this case had a limited ability to advocate on her behalf and instead relied on a restitution amount that was derived from a plea agreement negotiated between Mancuso and the government.

Nor can we find privity based on a conclusion that 18 U.S.C. § 2255 or the restitution statutes expressly foreclose a subsequent civil claim under § 2255 once a victim has received criminal restitution.  As we explain above, the text of § 2255 does not contain any indication that its application is limited to those victims who did not previously receive restitution.  And, far from expressly foreclosing subsequent civil claims, the restitution laws expressly contemplate such claims.  *See* 18 U.S.C. § 3664(j)(2); *id.* § 3664(*l*); *cf. EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 495 (3d Cir. 1990) ("If Congress did not believe that the individual's claim would be adequately pressed by the EEOC, it would surely have preserved the individual's right to bring suit either during or after the EEOC suit.").

Under the final factor of the collateral estoppel test, Doe did not have a full and fair opportunity to litigate the question of her damages in Mancuso's sentencing proceeding.

---

[17] While the sentencing court had an independent statutory obligation under the restitution laws to ensure that Doe was fully compensated by the restitution order, *see* 18 U.S.C. § 3664(f)(1)(A), the privity inquiry is confined to a determination of whether the government had the same interest as Doe in litigating the question.

During sentencing, the government is the party that advocates for its desired level of restitution. *See* 18 U.S.C. § 3664(e). As Doe was not a party to the prior criminal sentencing proceeding, she had a limited opportunity to influence the process. As we explain above, Doe's participation in the restitution process was limited by § 3664 to conferring with the government, providing information to a probation officer as to the extent of her losses, or providing testimony to the sentencing court only if the sentencing court determined that such testimony was warranted. *See United States v. Brown*, 744 F.2d 905, 910 (2d Cir. 1984) ("[T]he victim is not a party to a sentencing hearing and therefore has only a limited ability to influence the outcome. The victim cannot control the presentation of evidence during . . . the sentencing hearing and is not even guaranteed the right to testify about the extent of his losses."). There were no other provisions of the restitution statutes that permitted Doe to influence the sentencing court's restitution decision. *See United States v. Stoerr*, 695 F.3d 271, 279 (3d Cir. 2012).

We remain mindful of the fact that, at its core, collateral estoppel is an equitable doctrine. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 255 (3d Cir. 2006). Thus, in addition to the four-factor test for collateral estoppel, we recognize the equitable exceptions to the general rule of collateral estoppel codified in the Restatement (Second) of Judgments. *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002). Relevant for our purposes is the equitable exception that applies where "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments § 28. In this case, Doe

30

was not able to obtain appellate review because she was not a party to the criminal proceeding during which Mancuso was ordered to pay restitution.[18]  *See Stoerr*, 695 F.3d at 276–277; *Brown*, 744 F.2d at 910.  Despite the fact that Doe may have believed, as she argues here, that the restitution award of $200,000 did not compensate her for her full losses, she was not permitted to appeal the sentencing court's award to this Court and thus cannot be bound by its determination.

Under the facts of this case, where the interests of Doe and the government were not squarely aligned, she had a limited ability to participate in the determination of her restitution in front of the sentencing court, and she had no

[18] We have on one occasion allowed a purported victim to directly appeal a restitution order, but without an examination of the purported victim's standing to appeal.  *See United States v. Kones*, 77 F.3d 66 (3d Cir. 1996).  We later disavowed our assumption of jurisdiction in that decision, noting that a "'drive-by jurisdictional ruling[],' in which jurisdiction 'ha[s] been assumed by the parties, and . . . assumed without discussion by the [c]ourt,' does not create binding precedent."  *Stoerr*, 695 F.3d at 277 n.5 (alterations in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)).

The CVRA accorded crime victims the right to petition the Court of Appeals for a writ of mandamus based on a denial of the right to be reasonably heard at sentencing or a denial of the right to full restitution.  *See* 18 U.S.C. § 3771(d)(3).  However, as noted *supra* note 12, the sentencing court's restitution order pre-dated the passage of the CVRA.

ability to seek appellate review of that determination, we are of the firm belief that the application of collateral estoppel would simply be inequitable and would offend the "deep-rooted historic tradition that everyone should have his own day in court."[19] *Nationwide*, 571 F.3d at 314 (internal quotation marks omitted) (quoting *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996)). For these reasons, and because the collateral estoppel test and exception set forth above counsel against the application of the doctrine, we will not apply collateral estoppel to bar Doe's claim.

---

[19] Moreover, we are particularly loath to apply collateral estoppel to disrupt Congress's remedial scheme where Congress has expressly provided for estoppel with respect to one aspect of a later-filed civil claim, but declined to provide for estoppel with respect to a victim's damages. *See* 18 U.S.C. § 3664(*l*) ("A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding . . . brought by the victim."); *cf. Taylor*, 553 U.S. at 903 ("Congress' provision for FOIA suits with no statutory constraint on successive actions counsels against judicial imposition of constraints through extraordinary application of the common law of preclusion."). "The courts should not jam judicially created doctrines such as res judicata into the gears of Congress' carefully crafted statutory machinery." *United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994).

*C.     Relief from Entry of Default*

A judgment setting aside the entry of default is within a district court's discretion, *$55,518.05 in U.S. Currency*, 728 F.2d at 194–95, and may only be made "for good cause," Fed. R. Civ. P. 55(c).    In exercising that discretion and determining whether "good cause" exists, we have instructed district courts to consider the following factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct."   *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

The District Court rested its judgment setting aside the entry of default against Mancuso solely on the finding that Mancuso had a meritorious defense—specifically, that the prior criminal restitution award barred Doe's present civil claim.  The District Court did not address whether Doe would be prejudiced by a vacatur of default or whether the default was the result of Mancuso's culpable conduct.  Given that we find Doe's claim is not barred by the prior criminal restitution award, and the District Court made no additional findings with respect to its vacatur of default for us to review, we will vacate the District Court's judgment and remand to the District Court for consideration anew of whether there is "good cause" for setting aside the default entered against Mancuso.

## IV.     CONCLUSION

For the foregoing reasons, we will reverse the judgment of the District Court dismissing Doe's complaint against Mancuso, vacate the judgment of the District Court

33

setting aside the default entered against Mancuso, and remand for further proceedings consistent with this opinion.