**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1679
_____

UNITED STATES OF AMERICA

v.

AARON CARMICHAEL,
                                    Appellant
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 1-21-cr-0069-001)
District Judge: Honorable Jennifer P. Wilson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2023

Before:  JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges*

(Filed:  April 3, 2023)
_____

OPINION*
_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Aaron Carmichael challenges his sentence, arguing that the District Court should have agreed with his criticism of the sentencing guidelines for child pornography offenses. He also argues that he should not have to pay restitution to one of the victims depicted in the pornography he possessed. Because his arguments lack merit, we will affirm.

## I. BACKGROUND

Carmichael came to the attention of federal authorities in January 2021 after child pornography was posted in an internet chatroom using the internet protocol address associated with the home Carmichael shared with his girlfriend and her three children. Law enforcement officers searched the home in February 2021. During the search, after being read his *Miranda* rights, Carmichael admitted using his phone to download pornographic images of persons he claimed he thought were 18 or 19 years old, though he acknowledged they may have been younger. He also admitted to having posted images in the earlier mentioned internet chatroom using the username "Skinnyjeans34." (PSR ¶ 6.) That was the username that had posted the child pornography.

Law enforcement officials were unable to unlock Carmichael's phone, but they were able to review items saved on its Subscriber Identity Module (SIM) card, which included 88 files containing child pornography. Of those 88 files, 60 were videos and the remaining 28 were images. Among the 28 images were the eight images that had been posted in the chatroom. At least 15 of the 88 files depicted victims under the age of 12.

2

And 10 of the 88 files contained images of "sadistic or masochistic conduct/violence imagery[.]" (Answering Br. at 5 (quoting PSR ¶ 7).)

Carmichael was indicted in March 2021 for one count of distribution of images containing the sexual exploitation of a child, in violation of 18 U.S.C. § 2252A(a)(2), and one count of possession of images containing the sexual exploitation of children, in violation of 18 U.S.C. § 2252A(a)(5)(B). He pled guilty to both counts.

The Presentence Investigation Report ("PSR") for Carmichael recommended a guidelines range of 188 to 235 months' imprisonment, derived from a total offense level of 34 and a criminal history category of III. The PSR calculated the base offense level to be 22, pursuant to U.S.S.G. § 2G2.2(a)(2). That number was increased by 15 levels due to the following five enhancements:

> Two additional levels because the material "involved a prepubescent minor or a minor who had not attained the age of 12." U.S.S.G. § 2G2.2(b)(2).
>
> Two additional levels because the defendant "knowingly engaged in distribution, other than distribution described" in § 2G2.2(b)(3)(A)-(E). U.S.S.G. § 2G2.2(b)(3)(F).
>
> Four additional levels because the material at issue "portray[ed] sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(4)(A).

Two additional levels because "[t]he offense involved the use of a computer[.]" U.S.S.G. § 2G2.2(b)(6).

Five additional levels because "the offense involved" the equivalent of "600 or more images[.]"[1] U.S.S.G. § 2G2.2(b)(7)(D).

Finally, three levels were subtracted for Carmichael's acceptance of responsibility. U.S.S.G. § 3E1.1(a).

Carmichael objected to the application of all but the distribution enhancement as being unsound as a matter of sentencing policy.[2] At sentencing, he agreed with the District Court's summary of his objection as being that those "enhancement[s] are essentially antiquated." (App. at 15.) And, relatedly, that those enhancements had been subject to criticism, including by the Sentencing Commission, for supposedly "failing to properly account for [aggravating] content [in the images] and collect[ion] behavior [by

---

[1] The PSR calculated the 60 videos (running 5 hours and 28 minutes) as equivalent to 7,500 still images.

[2] At sentencing, Carmichael also challenged the distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(F) as duplicative since he pled guilty to distribution in violation of 18 U.S.C. § 2252A(a)(2), which conduct was already incorporated into his base offense level of 22. The District Court overruled that objection because it concluded that non-distribution convictions could also yield a base level of 22 and, so, that enhancement was not duplicative. Carmichael notes in passing that this objection was overruled but does not purport to challenge it on appeal or offer any argument that the District Court erred, and hence he has waived any such argument. *See United States v. Stadtmauer*, 620 F.3d 238, 264 n.31 (3d Cir. 2010) ("But 'an issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice[.]'" (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir.2004))); *see also United States v. Kolodesh*, 787 F.3d 224, 232 n.6 (3d Cir. 2015) (deeming an "argument … waived due to the cursory nature of the reference to it in the brief").

4

non-production defendants] as well as advances in technology." (App. at 15.) The District Court overruled his objection.

The District Court also considered and rejected the same arguments when Carmichael advanced them in support of a variance. The District Court expressly recognized that the Sentencing Commission had issued a report indicating that "a high percentage of non-production offenses include many of the enhancements that have been applied in this case[.]" (App. at 32.) But, the District Court explained, "that does not convince the Court that the guidelines are outdated as a matter of policy in all instances." (App. at 32.) "Instead," the District Court found it "demonstrate[d] that, unfortunately, the perpetrators of this category of offense utilized the same means to receive, possess, and distribute images of the sexual exploitation of children." (App. at 32-33.) Accordingly, the District Court expressed its view that "the relative ease with which the internet facilitates the distribution is not a reason to vary from, the guidelines range." (App. at 33.)

Additionally, Carmichael objected to paying restitution to one of the four children identified in the images he possessed. According to Carmichael, that victim, referred to as "Jane," should not receive restitution because she elects to no longer be informed of each case involving images depicting her sexual abuse, and because her representative

submitted victim impact information that preceded Carmichael's conduct in this case.[3]

The District Court rejected those arguments too.

Ultimately, the District Court adopted the PSR's guideline range, imposed a

bottom-of-the-guidelines sentence of 188 months, and ordered $3,000 in restitution for

Jane, as well as $3,000 for each of the other three identified victims. This timely appeal

followed.

## II. DISCUSSION[4]

### A. It Was Not Error To Deny A Variance[5]

Carmichael argues that the District Court erred in denying him a variance based on

his arguments, which criticize the sentencing guidelines enhancements for child

pornography cases.[6] In short, he contends that the child pornography sentencing

---

[3] A victim, such as Jane, is authorized to assert her rights, including with respect to restitution, using a representative. 18 U.S.C. § 3771(a), (d). Carmichael does not argue otherwise.

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[5] This Court reviews a district court's sentence for procedural as well as substantive reasonableness. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The abuse-of-discretion standard applies to both the Court's procedural and substantive reasonableness inquiries. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

[6] We note that the District Court was correct to analyze Carmichael's policy-based arguments in connection with a potential variance. As we have explained, there is a three-step process for imposing a procedurally reasonable sentence: first, the district court is required to correctly calculate the defendant's advisory guidelines range; next, the district court is required to rule on motions for departure, if any; and then, the district court is to exercise its discretion in applying the 18 U.S.C. § 3553(a) factors. *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010). When, as here, a defendant raises

6

guidelines embodied in U.S.S.G. § 2G2.2 are the outdated "product of political posturing" and have faced "mounting scholarly and judicial criticism." (Opening Br. at 7.) He is particularly critical of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today ("PROTECT") Act of 2003, Pub. L. No. 108-21. The PROTECT Act, he notes, made changes to several enhancements under U.S.S.G. § 2G2.2, which, in his view, "have not kept pace with advancement and digital and mobile technology, rendering them mostly ineffective to distinguish aggravating content and collection behavior among Defendants, instead serving only to increase sentences across all non-production cases." (Opening Br. at 9.) Additionally, he asserts we should heed the Second Circuit's opinion in *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010), which discounts U.S.S.G. § 2G2.2 as an "eccentric Guideline of highly unusual provenance."

But in making this argument, Carmichael ignores our decision in *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010). In that case, we explicitly acknowledged criticism of the sort Carmichael has raised and reviewed the Second Circuit's *Dorvee* decision. *Grober*, 624 F.3d at 607 (discussing the reasons that *Dorvee* concluded that the child pornography guideline, U.S.S.G. § 2G2.2, was "not worthy of the weight afforded to

---

disagreements with the soundness of applicable guidelines (though correctly calculated), the district court is not authorized to re-calculate the range omitting the enhancements in question if it agrees with that defendant's policy arguments. Rather, we have explained that the proper course is to grant a variance below the guidelines range, if justified. *See United States v. Arrelucea-Zamudio*, 581 F.3d 142, 148-49 (3d Cir. 2009) (explaining that the third step, not the first or second steps, was the appropriate analytical place for considering policy disagreements in the immigration context).

other Guidelines"). In *Grober*, we agreed that a district court could exercise its discretion to not "apply the Guidelines range recommended by § 2G2.2" if the court explained its reasoning under § 3553(a) factors. *Id.* at 609. We nevertheless made it clear that there is no abuse of discretion in sentencing a defendant in accordance with § 2G2.2. *Id.*

The District Court here had no obligation to vary below the guidelines range on the basis of Carmichael's criticisms of the child pornography guidelines. The District Court was fully aware that it had the authority to vary below the guidelines range, (*See* App. at 31-32 ("I will note at the outset I am aware I have the discretion to grant a variance, I'm perfectly well aware of that."), and it more than adequately explained why it was not persuaded by Carmichael's arguments. As the government correctly observes, the District Court was "not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." (Answering Br. at 15 (quoting *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3d Cir. 2009).)

## B.   It Was Not Error To Award Restitution[7]

Next, Carmichael briefly reprises his arguments regarding restitution ordered for Jane, noting her representative filed a victim impact statement that preceded the criminal conduct here by between six and seven years.[8] He argues that "[t]here is nothing in the

---

[7] "While we exercise plenary review over whether an award of restitution is permitted under law, we review specific awards of restitution for abuse of discretion." *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999).

[8] There is no dispute that images of Jane are involved in this case. Likewise, it is clear that Carmichael's crimes of convictions, both violations of 18 U.S.C. § 2252A, are

8

current submission that indicates a connection between the Defendant's conduct in 2021 [and] … 'Jane's' present suffering or her present status since it is admitted that she has no knowledge of any victimization because she has declined to be notified of any such activity." (Opening Br. at 11-12.)

We are wholly unconvinced by that causation argument. Indeed, we have already rejected the notion that consumers of child pornography engage in a victimless crime because the sexual abuse they watch in some dark corner occurred previously and outside of their presence. *See United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007) ("The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials."); *id.* ("Consumers … who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization.").

Our statements in *Goff* were not made in the restitution context, but the Supreme Court's decision in *Paroline v. United States*, 572 U.S. 434 (2014), was decided in that context and forecloses Carmichael's causation argument. As the government correctly observes, the parties in *Paroline* stipulated that "the victim did not know who Paroline was and that none of her claimed losses flowed from any specific knowledge about him or his offense conduct." 572 U.S. at 442. But Paroline was not off the hook for restitution. The Supreme Court explained: "The cause of the victim's general losses is the trade in her images. And Paroline is a part of that cause, for he is one of those who

---

subject to mandatory restitution under 18 U.S.C. § 2259. *See Doe v. Hesketh*, 828 F.3d 159, 170 (3d Cir. 2016) ("Section 2259 provides for *mandatory* restitution to victims of the crimes codified at 18 U.S.C. §§ 2251–2252A[.]") (emphasis in original).

9

viewed her images." *Id*. at 456. Thus, "[w]hile it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses." *Id*. at 456-57. The Supreme Court concluded "it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this." *Id*.

As the District Court properly noted, Jane's impact statement described her "perpetual anxiety caused by the fear of people continuing to view the images that are available on the internet." (App. at 18.) Further, the District Court cited Jane's expert's opinion stating that Jane will require a lifetime of therapy. The Court was within its discretion in concluding that Carmichael contributed to that harm as a "documented consumer" of the images. (App. at 18.) It was no error to order that he pay restitution to Jane.[9]

## III.  CONCLUSION

For the foregoing reasons, we will affirm.

---

[9] Furthermore, Carmichael has effectively forfeited any argument to the contrary by failing to file a reply. *See Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) (explaining that failure to respond to arguments on a particular point "waives, as a practical matter anyway, any objections not obvious to the court to [a] specific point[] urged" by the other party on appeal).